221 P.3d 23

Kuldip VERMA and Binu Verma, husband and wife, Plaintiffs/Counter–Defendants/Appellees/Cross–Appellants,

v.

Tyson S. STUHR and Stacy E. Stuhr, husband and wife, Defendants/Counter–Claimants/Appellants/Cross–Appellees.

Kuldip Verma and Binu Verma, husband and wife, Plaintiffs/Counter–Defendants/Appellees/Cross–Appellants,

v.

Tilley Farms, Inc., an Arizona corporation, Defendant/Counter–Claimant/Appellant/Cross–Appellee.

Kuldip Verma, Trustee of the Binu Verma M.D. Profit Sharing Plan, Plaintiff/Appellee/Cross–Appellant,

v.

Andrew M. Dougherty and Katherine Dougherty, as Trustees of the Dougherty Living Trust, dated January 30, 2003, Defendant/Appellant/Cross–Appellee.

Nos. 1 CA–CV 07–0576, 1 CA–CV 07–0747, 1 CA–CV 08–0052.

Court of Appeals of Arizona, Division 1, Department D.

Oct. 29, 2009.

148

Lang & Baker, PLC By David R. Baker, Scottsdale, Attorneys for Plaintiffs/Appellees/Cross–Appellants.

Jennings Strouss & Salmon, PLC By Jeffrey P. Boshes, Phoenix, Attorneys for Defendants/Appellants/Cross–Appellees Stuhr.

Jennings Strouss & Salmon, PLC By Jeffrey P. Boshes, Phoenix, Attorneys for Defendant/Appellant/Cross–Appellee Tilley Farms.

Paul G. Ulrich, PC By Paul G. Ulrich, Phoenix, Co–Counsel for Defendants/Appellants/Cross–Appellees Dougherty.

Jennings Strouss & Salmon, PLC By Jeffrey P. Boshes, Phoenix, Co–Counsel for Defendants/Appellants/Cross–Appellees Dougherty.

## OPINION

SWANN, Judge.

¶ 1 Three similar cases require us to decide when A.R.S. § 33–422 permits a buyer to rescind a contract to purchase real property. In each case, the buyers had actual knowledge of a federal flood easement over the subject property within the time provided for due diligence under their contracts. In each case, the buyers affirmatively elected not to terminate the contract after learning of the defect in title created by the easement. Ultimately, however, the buyers attempted to extract themselves from the transactions by invoking the statute's express disclosure requirement and its guarantee of a unilateral right of rescission. In two of the cases, we conclude that the buyers allowed their statutory rescission rights to lapse, and that they are bound by the terms of their contracts. In the third, we conclude that the right was validly invoked.

¶ 2 Our analysis requires us to resolve a number of issues concerning the validity and application of A.R.S. § 33–422. Subsection (A) of the statute provides:

> A seller of five or fewer parcels of land, other than subdivided land, in an unincorporated area of a county and any subsequent seller of such a parcel shall furnish a written affidavit of disclosure to the buyer, at least seven days before the transfer of the property, and the buyer shall acknowledge receipt of the affidavit.

First, we hold that there is no upper limit to the size of a parcel subject to the statute. Second, we hold that the statute applies to parcels located only partially within unincorporated areas. Third, we hold that the statute is constitutional, and that a seller's compliance with the statute is mandatory unless the buyer waives its rights.

¶ 3 Compliance requires the seller to furnish an affidavit of disclosure that addresses those attributes of land identified in the statute's model affidavit of disclosure. Once an affidavit is furnished, the buyer's absolute right to rescind pursuant to A.R.S. § 33–

422(D) exists for five days. The right may not, however, be exercised after the transaction has closed. Finally, an affidavit that contains inaccurate statements may give rise to a claim for relief at common law, but it does not create a continuing right to rescind beyond the five days allowed by the statute.

## FACTS AND PROCEDURAL HISTORY

¶ 4 The three cases considered in this opinion share many facts in common. We address those common facts first, and then address the facts unique to each case.

### I. Common Facts

¶ 5 Each of the defendants below (collectively, "sellers") owned parcels of at least 600 acres. Those properties are subject to a flood easement held by the United States, pursuant to which the United States has the "perpetual right, power, privilege and easement occasionally to overflow, flood, and submerge the land ... and all structures and improvements thereon." The easements provide that "no structures for human habitation shall be constructed or maintained on the land." The sellers knew of the flood easement and the prohibition on construction.

¶ 6 In 2005, the sellers entered into individual purchase agreements with Kuldip and Binu Verma (the "Vermas"), under which the Vermas agreed to buy the sellers' respective properties. The purchase agreements provided, in relevant part:

- The Vermas would make a down payment consisting of an initial deposit due upon execution of the agreement; a second deposit due on or before a defined "Risk Date"; and an additional payment due on the close of escrow.
- Upon receipt of a preliminary title report from the agreed-upon escrow agent, the Vermas had ten days to object in writing to any of the exceptions listed in the report. Exceptions to which no objections were made would be deemed Permitted Exceptions.
- Until the "Risk Date" had passed, the Vermas had an absolute right to cancel the transaction. If they did not do so, their deposits became nonrefundable.

- The Vermas warranted and acknowledged that they were "purchasing the Property on an 'as-is' basis, except as specifically warranted."
- The agreements expressly provided that "all or a portion of the Property is in a floodplain or within flood easements."

¶ 7 The Vermas received a Commitment for Title Insurance for each of the properties. Each Commitment indicated that the federal flood easement was an exception to title insurance. In no case did the Vermas object to that exception.

¶ 8 By April 2005, the Vermas' private real estate consultant, Pranav Sahai, received further documents revealing the easements. The Vermas decided, however, to proceed with the transactions.

¶ 9 Under varying circumstances in each case, each seller provided the Vermas with an affidavit of disclosure. The Vermas finally sought to rescind all of the transactions based on A.R.S. § 33–422 and demanded the return of all money paid. The sellers refused to rescind.

¶ 10 The Vermas sued the sellers in superior court. In each action, the court entered summary judgment in favor of the Vermas based on their statutory rescission claims.

### II. Unique Facts

#### A. *Verma v. Tilley Farms*

¶ 11 Tilley Farms ("Tilley") entered into its purchase agreement with the Vermas in March 2005. The Vermas paid to extend the agreement so that the final date for closing was February 22, 2006. Tilley furnished an affidavit of disclosure on May 10, 2005. On that date, C.W. Adams, Tilley's president and co-owner, was at the escrow agent's offices. Brian Stillman of Arizona Land Advisors, who represented the Vermas in the transaction, asked Adams to complete an affidavit of disclosure and provided Adams with a form. The form was not perfectly consistent with the then-current version of A.R.S. § 33–422; rather, it was drawn from former A.R.S. § 11–806.03, a predecessor version of A.R.S. § 33–422. Adams completed the form and returned it to Stillman. On May 12, the

Vermas signed the form next to the language "AGREED, ACCEPTED AND APPROVED."

¶ 12 By letter dated December 1, 2005, the Vermas expressed their intent to rescind the transaction and recover all money paid based on "inadequate and improper disclosures by the seller as required by A.R.S. § 33–422." In the lawsuit that followed, the Vermas argued that Tilley never provided a compliant affidavit of disclosure. The Vermas asserted that the statute imposes a non-waivable obligation on the seller to provide a compliant affidavit, and noted that Tilley's affidavit was missing several questions and answers required by the then-current statute. The superior court entered summary judgment in favor of the Vermas, granting them a refund of their deposits plus attorneys' fees. The Vermas were not awarded amounts they had paid under the contract as non-refundable extension fees.

¶ 13 Tilley timely appeals from the judgment and from the denial of its Rule 60(c)(6) motion. The Vermas timely cross-appeal.

## B. *Verma v. Dougherty*

¶ 14 Andrew and Katherine Dougherty (the "Doughertys") entered into their purchase agreement with the Vermas in March 2005. The Doughertys' agent had earlier sent a letter to the Vermas' agent noting that the property was "within the confines of the Painted Rock Dam flood easement."

¶ 15 The Commitment provided by the escrow agent listed as an exception the flood easement and a separate "flowage" exception. Sahai, the Vermas' real estate agent, had a copy of a 1994 district court document evidencing the easement. The Vermas did not object to any exceptions. Instead, they paid to extend the agreement so that the final date for closing was August 22, 2005.

¶ 16 The Doughertys furnished an affidavit of disclosure on May 10, 2005. On that date, Stillman personally delivered a disclosure form to Andrew Dougherty at his office and Dougherty completed it. As in *Tilley*

*Farms,* the form was not entirely consistent with the then-current statute—it was based on an earlier version of the statute. On May 12, the Vermas signed the form next to the language "AGREED, ACCEPTED AND APPROVED."

¶ 17 The sale closed on August 24, 2005. By letter dated December 1, 2005, Kuldip Verma [1] expressed his intent to rescind the transaction and recover all monies paid based on "inadequate and improper disclosures by the seller as required by A.R.S. § 33–422." Verma sued on the same theory advanced in the *Tilley Farms* litigation, and the court granted him summary judgment. The judgment awarded Verma rescission damages plus attorneys' fees. Again, the court did not award the amount paid as non refundable extension fees. The court entered summary judgment for the Doughertys on their counterclaim for expenses incurred in repairing a well on the property. The Doughertys timely appeal from the judgment for Verma and from the court's denial of their Rule 60(c)(6) motion and motion for new trial. Verma timely cross-appeals.

## C. *Verma v. Stuhr*

¶ 18 Tyson and Stacy Stuhr (the "Stuhrs") entered into their purchase agreement with the Vermas in April 2005. Earlier that month, the parties had entered into a letter of intent for the sale of the property. The letter stated: "Please note that property lies within the confines of the Painted Rock Dam Flood easement." The Vermas paid for extensions to the agreement so that the final date for closing was December 9, 2005.

¶ 19 By letter dated December 1, 2005, the Vermas requested that the Stuhrs provide an affidavit of disclosure pursuant to A.R.S. § 33–422. On December 5, the Stuhrs furnished an affidavit. A letter accompanying the affidavit asserted that disclosure was not required and was being provided as a courtesy only.

¶ 20 By letters dated December 8 and 9, the Vermas asserted a statutory right to

---

1. Prior to closing, the Vermas assigned their position in the transaction to a profit sharing plan for which Kuldip Verma was trustee.

rescind the transaction and demanded the return of the earnest money. The Stuhrs declined to return the earnest money, and the transaction did not close. The Vermas sued the Stuhrs in February 2006.

¶ 21 As in *Tilley Farms* and *Dougherty*, the court entered summary judgment awarding the Vermas the amount of the earnest money plus attorneys' fees but not the amount they had paid in extension fees.

¶ 22 The Stuhrs timely appeal from the judgment. The Vermas timely cross-appeal.

¶ 23 We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION[2]

### I. Common Legal Issues

#### A. A.R.S. § 33–422 Applies to Parcels Larger Than 160 Acres

¶ 24 Each seller argues that an affidavit of disclosure was not required because A.R.S. § 33–422 is inapplicable based on the size of the property at issue. Section 33–422 has been amended several times since its original adoption in 2000 as A.R.S. § 11–806.03. However, the following provisions have remained substantially unchanged.

A. A seller of five or fewer parcels of land, other than subdivided land, in an unincorporated area of a county and any subsequent seller of such a parcel shall furnish a written affidavit of disclosure to the buyer, at least seven days before the transfer of the property, and the buyer shall acknowledge receipt of the affidavit.

. . . .

C. No release or waiver of a seller's liability arising out of any omission or mis-

representation contained in an affidavit of disclosure is valid or binding on the buyer.

D. The buyer has the right to rescind the sales transaction for a period of five days after the affidavit of disclosure is furnished to the buyer.

E. The seller shall record the executed affidavit of disclosure at the same time that the deed is recorded. The county recorder is not required to verify the accuracy of any statement in the affidavit of disclosure. A subsequently recorded affidavit supersedes any previous affidavit.

A.R.S. § 33–422 (Supp.2008).

¶ 25 By its plain terms, the statute applies to "parcels of land, other than subdivided land." The sellers argue that parcels "other than subdivided land" must necessarily be "unsubdivided lands." A separate statute, A.R.S. § 32–2101(59) (2008), excludes parcels larger than 160 acres from its definition of "unsubdivided lands." Following the sellers' proffered syllogism to its apparent conclusion, parcels larger than 160 acres are not "unsubdivided," and therefore are not subject to A.R.S. § 33–422.[3] We disagree.

¶ 26 A.R.S. § 33–422 does not use the defined term "unsubdivided lands." And there is a logical component implicit in the sellers' arguments that is simply untenable—namely that parcels in excess of 160 acres are automatically "subdivided" because they are not "unsubdivided." We think that the Legislature has clearly indicated its intent that A.R.S. § 33–422 apply to lands that have not been subdivided, regardless of size.

#### B. A.R.S. § 33–422 Is Constitutionally Valid

¶ 27 The sellers argue that A.R.S. § 33–422 is unconstitutionally vague because it

---

2. We review the grant of summary judgment de novo, *Eller Media Co. v. City of Tucson*, 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App.2000), viewing the facts and the inferences to be drawn from those facts in the light most favorable to the party against whom judgment was entered. *Prince v. City of Apache Junction*, 185 Ariz. 43, 45, 912 P.2d 47, 49 (App.1996).

3. The sellers correctly note that in *Transamerica Title Insurance Company v. Cochise County*, 26 Ariz.App. 323, 328, 548 P.2d 416, 421 (1976), the court held that Articles 1 and 4 of Chapter 20,

Title 32 are *in pari materia* and therefore must be construed as one law with A.R.S. § 11–806.01, which is in the same title and chapter as A.R.S. § 11–806.03, the predecessor to A.R.S. § 33–422. Section 32–2181.02(A)(2), which is in Article 4, Chapter 20 of Title 32, provides that sales of lots of 160 acres or more "are exempt under this article." Because A.R.S. § 32–2181.02(A)(2) expressly limits the exemption to Title 32, Chapter 20, Article 4, which deals with the sale of *subdivided* lands, we conclude that the exemption has no application here.

specifies neither the degree of diligence required by the seller nor the extent of the explanation that must be provided on the affidavit. Again, we disagree.

¶ 28 One who has suffered or may suffer an injury because of the vagueness of a statute may challenge the constitutionality of the statute on that basis. *State v. McDermott*, 208 Ariz. 332, 335, ¶ 11, 93 P.3d 532, 535 (App.2004). We review the constitutionality of a statute de novo. *State v. Kaiser*, 204 Ariz. 514, 517, ¶ 8, 65 P.3d 463, 466 (App.2003). A strong presumption exists that the statute is constitutional, and we construe it, if possible, to render it constitutional. *Id.*

¶ 29 A statute must provide persons of ordinary intelligence a reasonable opportunity to know the conduct prohibited or the duty imposed. *Hernandez v. Frohmiller*, 68 Ariz. 242, 251, 204 P.2d 854, 860 (1949); *Kaiser*, 204 at 517, ¶ 9, 65 P.3d at 466. "[T]he duty imposed [by the statute] must be prescribed in terms definite enough to serve as a guide to those who have the duty imposed upon them." *Hernandez*, 68 Ariz. at 251, 204 P.2d at 860 (quoting *Vallat v. Radium Dial Co.*, 360 Ill. 407, 196 N.E. 485, 487 (1935)). A statute is not void for vagueness because it can be interpreted in more than one way or because it does not provide perfect notice. *McDermott*, 208 Ariz. at 336, ¶ 13, 93 P.3d at 536.

¶ 30 Section 33–422 requires a seller to answer questions about his or her property. The 2003 version of the statute was in effect when the sellers provided their affidavits of disclosure to the Vermas. The 2003 model affidavit lists twelve specific questions, many of which may be answered simply by checking a box, and some of which allow the seller to answer "unknown." Several of the questions provide space to explain an answer, but with the exception of question 12 (which pertains to the statutory requirements regarding land divisions), no explanation is automatically required. *See Vig v. Nix Project II Partnership*, 221 Ariz. 393, 398, ¶ 23, 212 P.3d 85, 90 (App.2009). The certification at the end of the model affidavit states that the party signing the document certifies that the information "is true, complete and correct according to my best belief and knowledge." A.R.S. § 33–422(F) (Supp.2003).

¶ 31 The statute is not impermissibly vague. It provides that a seller must disclose specific items of information to the best of his or her knowledge. A person of ordinary intelligence would understand that the statute requires responsive answers to the questions asked.

¶ 32 The sellers further contend that A.R.S. § 33–422 unconstitutionally impairs their right to contract. A statute impairs the obligation of a contract in violation of Article I, Section 10 of the United States Constitution only if it has "the effect of rewriting antecedent contracts, that is, of changing the substantive rights of the parties to existing contracts." *Picture Rocks Fire Dist. v. Pima County*, 152 Ariz. 442, 445, 733 P.2d 639, 642 (App.1986) (citing *Manning v. Travelers Ins. Co.*, 250 So.2d 872 (Fla.1971)), *disapproved on other grounds by Republic Investment Fund I v. Town of Surprise*, 166 Ariz. 143, 800 P.2d 1251 (1990); *see also State v. Direct Sellers Ass'n*, 108 Ariz. 165, 169–170, 494 P.2d 361, 365–66 (1972) (the prohibition against a state passing a law impairing the obligation of contracts "means only that no state may impair the obligation of an *Existing* [sic] contract"). When the statute is in place at the time the contract is executed, it does not violate the Constitution; the parties are presumed to know the law and the law is made part of the contract. *Samaritan Health Sys. v. Superior Court (Schwartz)*, 194 Ariz. 284, 293, ¶ 41, 981 P.2d 584, 593 (App.1998).

¶ 33 The statutory obligation to deliver an affidavit of disclosure and the related right of rescission has been in place since 2000, well before the sellers and the Vermas entered into contractual relationships. We are not confronted in this case with any amendment that applies retroactively, and conclude that the statute does not unconstitutionally impair the sellers' right to contract.

## C. Compliance with A.R.S. § 33–422 Is Mandatory

¶ 34 The sellers argue that the court erred in finding that A.R.S. § 33–422 is man-

datory. They contend that we should construe the statutory language that the "seller ... *shall* furnish a written affidavit" as directory, not mandatory.[4] A.R.S. § 33–422(A) (emphasis added). We disagree.

¶ 35 Our primary goal in interpreting a statute is to find and give effect to legislative intent. *Mail Boxes, etc., U.S.A. v. Indus. Comm'n,* 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). Use of the word "shall" in a statute ordinarily demonstrates a legislative intent to impose a mandatory obligation. *HCZ Constr., Inc. v. First Franklin Fin. Corp.,* 199 Ariz. 361, 364, ¶ 10, 18 P.3d 155, 158 (App.2001). Mandatory terms may be interpreted as directory depending on context and usage, and depending on whether the legislative intent is best served by that construction. *Ariz. Minority Coal. for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n,* 211 Ariz. 337, 353, ¶ 58, 121 P.3d 843, 859 (App.2005); *Way v. State,* 205 Ariz. 149, 153, ¶ 10, 67 P.3d 1232, 1236 (App.2003).

¶ 36 We see nothing in A.R.S. § 33–422 to suggest that the Legislature intended "shall" to be interpreted in any way other than its ordinary meaning. As we recently noted in *Vig,* "[t]he plain language of the statute reveals that its primary purpose is to protect buyers from unscrupulous sellers who might otherwise fail to disclose material defects in a property. The statute also serves to protect sellers from unscrupulous buyers who might seek to invalidate improvident property transactions through the use of specious claims that defects had been wrongly concealed." 221 Ariz. at 397, ¶ 13, 212 P.3d at 89. That dual purpose is not served by a directory interpretation that would allow the parties to forgo the affidavit of disclosure requirement at their unilateral discretion.

¶ 37 In our view, the unequivocal statutory right of rescission militates in favor of a mandatory construction. The specificity of the model form of affidavit likewise suggests that the Legislature intended the statute to be mandatory. The Legislature has taken care in determining the particular information it believes parties should know before completing a transaction of the type to which the statute applies. We hold, therefore, that compliance with A.R.S. § 33–422 is mandatory. A seller must provide the buyer with an affidavit of disclosure that complies with the statute. Once that is done, the buyer's five-day period to rescind commences. A.R.S. § 33–422(D).

¶ 38 Subsection (F) of the statute describes the characteristics of a compliant affidavit of disclosure. First, the affidavit must meet the requirements of A.R.S. § 11–480, the statute describing the form of instruments that are presented to the county recorder for recordation. Second, the affidavit must completely and candidly address the attributes of land described in the model form. *See Vig,* 221 Ariz. at 398, ¶ 21, 212 P.3d at 90. The affidavit must "follow substantially" the model form, but need not exactly mirror it so long as the required information is included.[5]

## D. An Erroneous Affidavit Does Not Give the Buyer a Continuing Right of Rescission

¶ 39 An error or omission in an affidavit of disclosure does not render an affidavit noncompliant such that the buyer is given a continuing right to rescind beyond the time stated in the statute. Where an affidavit fails to disclose the required information accurately, ordinary contract and tort remedies protect the buyer against any harm suffered from nondisclosure or fraud. We base this conclusion on the language of the statute itself.

¶ 40 The statute expressly contemplates the possibility that erroneous affida-

---

4. By "directory," we take the sellers to mean not that compliance with the statute is permissive, but rather that it is a procedural requirement that imposes no substantive consequences absent a showing of actual injury.

5. Tilley and the Doughertys argue generally that substantial compliance with the statute is ade-

quate. We reject that argument. Compliance may be achieved by an affidavit that conforms substantially to the model form, but that is not the same as substantially *complying*—for example, by supplying the pertinent information through means other than that prescribed by the statute.

vits will be recorded. Subsection (C) of the statute provides that a seller's "liability" for an omission or misrepresentation in an affidavit cannot be released or waived, and subsection (E) provides that the county recorder is not required to verify the accuracy of an affidavit. Despite its recognition that a seller might provide an erroneous affidavit, the Legislature did not provide a right of rescission upon discovery of an error after the five-day period has run. By its reference to "liability," and not "rescission," we believe the Legislature expressed its intent that contract and tort remedies are sufficient to redress omissions and misrepresentations in the affidavit. We decline to imply a separate right of rescission where the Legislature has created none.

### E. Affirmative Defenses Are Available to Establish Compliance with A.R.S. § 33–422

■ ¶ 41 The sellers contend that they should have been allowed to assert the affirmative defenses of waiver, estoppel, and laches to excuse their noncompliance or delayed compliance with A.R.S. § 33–422. The Vermas contend that such affirmative defenses are precluded by subsection (C) of the statute, which provides that a buyer is not bound by a "release or waiver of a seller's liability arising out of any omission or misrepresentation" in the affidavit. This argument, however, misses the mark—in each case, the Vermas sought statutory rescission on the grounds of noncompliance with the disclosure requirement, not liability arising out of an omission or misrepresentation. Nothing in the statute precludes a seller from asserting affirmative defenses to avoid the consequences of noncompliance.

### II. Unique Legal Issues

### A. *Verma v. Tilley Farms*

### 1. The Affidavit of Disclosure Did Not Comply with A.R.S. § 33–422

¶ 42 Tilley concedes that the affidavit of disclosure it provided was based on an out-

dated form. The Vermas argue that Tilley's affidavit did not comply with A.R.S. § 33–422 because it did not include several items from the model affidavit, and because Tilley answered one question inaccurately and another incompletely.[6]

¶ 43 We have already concluded above that an erroneous answer does not necessarily render an affidavit noncompliant such that the buyer has a continuing right to rescind. Consequently, Tilley's negative, and therefore incorrect, answer to the question whether the property lies within a regulatory floodplain did not make the affidavit noncompliant.

■ ¶ 44 Tilley's affidavit did not, however, answer completely the required questions pertaining to wastewater treatment facilities. Item 9 of the applicable model affidavit asks whether the property has an "on-site wastewater treatment facility (i.e., standard septic or alternative system ... )," whether the property will require installation of a wastewater treatment facility, and whether the treatment facility has been inspected. A.R.S. § 33–422(F) (Supp.2003). The affidavit Tilley completed asked, "Does the Property have a septic tank?" and "Will the Property require installation of a septic system? (Explain)." Tilley answered no to the first question, and did not answer the second. Tilley provided no information regarding inspection, because that question did not appear on the form that the Vermas provided.

¶ 45 Further, Tilley's affidavit did not include items 3 and 11 from the applicable model affidavit. Item 3 asks whether there is "a statement from a licensed surveyor or engineer available stating whether the property has physical access that is traversable by a two-wheel drive passenger motor vehicle," and item 11 asks whether the property "meet [s] the minimum applicable county zoning requirements of the applicable zoning designation." A.R.S. § 33–422(F) (Supp.

---

6. The Vermas base their argument on the 2005 version of the statute, which did not go into effect until August 2005, but offer no argument to support the application of this version of the statute against Tilley, which provided its affidavit

in May 2005. Accordingly, we reject the Vermas' arguments concerning items 13, 14, 15, and 16, because those items were not part of the statute in effect at the relevant time.

2003). Tilley argues that item 3 is satisfied because under the agreement the Vermas were required to obtain an American Land Title Association ("ALTA") Survey, and had they done so, they would have had the required information. Tilley argues that item 11 is also satisfied because "it [is] obvious" that "minimum applicable acreages and dimensions would be satisfied" and because its answer to another item implied the answer to item 11.

¶ 46 We do not find these explanations adequate to demonstrate compliance with the statute. The statute imposes an obligation on the seller to provide specific items of information, and Tilley did not describe all of the attributes addressed by the model form. The fact that the Vermas could otherwise discover the information does not establish Tilley's compliance.

## 2. The Vermas Were Estopped From Seeking Rescission Under A.R.S. § 33–422

¶ 47 We have already held above that a seller should be allowed to raise the affirmative defenses of waiver, estoppel, and laches. We find that the defense of estoppel applies here.

¶ 48 Equitable estoppel applies where the party to be estopped engages in acts inconsistent with a position it later adopts and the other party justifiably relies on those acts, resulting in injury. *Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, 50, ¶ 28, 156 P.3d 1149, 1155 (App. 2007).

¶ 49 The circumstances surrounding Adams' provision of the affidavit of disclosure are undisputed. Citing Adams' declaration, Tilley first asserted those circumstances in its statement of facts opposing the Vermas' motion for summary judgment and supporting summary judgment for Tilley. The Vermas have never disputed Tilley's version of the facts surrounding Tilley's provision of the affidavit, and we take those facts as undisputed for purposes of our analysis.

¶ 50 In May 2005, Tilley completed an affidavit provided *by the Vermas*, which the Vermas soon thereafter signed next to the language "AGREED, ACCEPTED AND APPROVED." Then, until December 2005, the Vermas continued to take action toward the completion of the sale. They even executed and paid for a third amendment to the purchase agreement to create a further right to extend closing.

¶ 51 Given those undisputed facts, we have no difficulty concluding as a matter of law that the Vermas were estopped from seeking statutory rescission on the ground that Tilley's affidavit was noncompliant with the statute. The Vermas, not Tilley, selected the form of affidavit. There is nothing in the statute to suggest the Legislature intended that a buyer may affirmatively lull a seller into the belief that it has complied with the statute only to invoke a right to rescission at the last minute. And there is nothing in the record to generate a triable issue of fact that anything short of that happened here.

¶ 52 We therefore need not address Tilley's argument that the court wrongly denied its Rule 60(c) motion, nor the Vermas' argument on cross-appeal concerning the exclusion of the amount they paid in extension fees from the award of damages. We vacate the superior court's judgment and reverse and remand for entry of judgment in favor of Tilley.

## B. Verma v. Dougherty

### 1. The Affidavit of Disclosure Did Not Comply with A.R.S. § 33–422

¶ 53 As in *Tilley Farms*, the Doughertys did not provide any information pertaining to items 3 and 11 from the model form. For the reasons discussed above, we find these inconsistencies between the affidavit furnished and the then-applicable statutory form fatal to the Doughertys' compliance with the statute.

### 2. Rescission Under A.R.S. § 33–422 Is No Longer Available After the Transaction Has Closed

¶ 54 Here, unlike in *Tilley Farms*, the transaction had closed before Verma attempted to rescind. We hold that the buyer's right to rescind under A.R.S. § 33–422(D) does not survive closing.

¶ 55 Section 33–422 contemplates that rescission will occur, if at all, no later than two days before closing. Subsection (A) provides that the affidavit must be furnished at least seven days before the transfer of the property.[7] Subsection (D) provides that the right to rescind must be exercised within five days after the affidavit is furnished. But the statute is silent concerning the consequences of a failure to provide a *compliant* affidavit before the transfer of title.

¶ 56 At oral argument, Verma contended that where a seller fails to provide an affidavit (or a compliant affidavit) before closing, we should read the statute as creating an ongoing right of rescission for one year after closing.[8] We decline to do so for several reasons. First, and most important, the statute does not expressly create such a lingering right. Second, were we to interpret subsection (D) as creating an implied right of rescission that survives closing, we would inject significant uncertainty into Arizona's recording system that the Legislature does not appear to have intended.

¶ 57 As a practical matter, once a transaction closes, a deed is usually recorded. Third parties, including lenders, are entitled to act in reliance on recorded instruments. Arizona public policy, as reflected in A.R.S. § 33–432 (2007), favors reliance on recorded deeds as evidencing unrestricted fee simple title absent express language to the contrary. Were we to find that A.R.S. § 33–422 creates the springing right of rescission that Verma seeks, we would inject significant uncertainty into the status of title to land throughout the state. We find nothing in Arizona's real property statutes to support such a result.

¶ 58 Because Verma did not first demand compliance with the statute, he could not rescind the bargain with the Doughertys after the August 2005 closing. He did not attempt rescission until December 2005, and

we conclude that the right was no longer available.

¶ 59 Because we so hold, we need not address the issue of affirmative defenses. We also need not address the Doughertys' argument that the court wrongly denied its Rule 59(a) and 60(c) motions, nor Verma's argument on cross-appeal concerning the exclusion of the amount paid in extension fees from the award of damages.

### 3. The Award of Well Repair Expenses

¶ 60 We do not address Verma's argument that the court should not have assessed against him the well repair expenses raised by the Doughertys' counterclaim because Verma presented no argument in the trial court in opposition of the Doughertys' motion for summary judgment on that claim. Having not raised the argument in the trial court, Verma may not now raise it on appeal. *Scottsdale Princess P'ship v. Maricopa County,* 185 Ariz. 368, 378, 916 P.2d 1084, 1094 (App.1995).

### C. *Verma v. Stuhr*

#### 1. A.R.S. § 33–422 Applies to Parcels Located Only Partially Within An Unincorporated Area

¶ 61 The Stuhrs contend that A.R.S. § 33–422 does not apply to their transaction because the statute applies to property in an "unincorporated area of the county," and their property is located partially within the boundaries of the incorporated Town of Gila Bend.

¶ 62 The Stuhrs' property was sold as a single parcel, at least part of which was located in an unincorporated area of a county. The statute does not state that it applies only to parcels contained *entirely* within unincorporated areas. Nor does it otherwise provide an exception for parcels located only partially within an unincorporated area.

7. Had Verma demanded a compliant affidavit fewer than seven days before closing, we would be presented with a different question. In such a case, the court would be required to consider whether affirmative defenses affected the buyer's rights and whether any equitable remedies might be available. We need not reach those questions

here, because we conclude that the closing itself disposes of Verma's claim.

8. Verma relies on A.R.S. § 12–541, the one-year statute of limitations governing claims for rights created by statute, in support of the argument that the right survives closing for a full year.

Therefore, we conclude that the plain language of A.R.S. § 33–422 requires its application to this transaction.

## 2. The Vermas Properly Exercised Their Right to Rescind Under A.R.S. § 33–422(D)

¶ 63 By the plain language of A.R.S. § 33–422, the buyer's right to rescind under subsection (D) is restricted only in that it must be exercised within five days after the affidavit of disclosure is furnished. The right to rescind is not contingent on the buyer's prior knowledge or lack of knowledge about any aspect of the property, and its exercise need not be based on the content of any disclosure in the affidavit.

¶ 64 The Stuhrs furnished the Vermas with an affidavit of disclosure shortly before the transaction was scheduled to close. The Stuhrs do not contend that the Vermas induced them not to provide the affidavit until that late date, and the equitable defenses of estoppel and laches are therefore unavailable. Rather, the Stuhrs contend only that the Vermas did not *ask* for the affidavit until the last minute. The Vermas, however, had no obligation to request the affidavit. The Stuhrs had an affirmative statutory duty to provide it. *See* A.R.S. § 33–422(A).

¶ 65 The Stuhrs' argument that the statute should not be read to allow a buyer to rescind even after the contractual Risk Date, after which the deposits became nonrefundable, is unavailing. The timing of the delivery of the affidavit of disclosure is within the exclusive control of the seller. To avoid a last-minute rescission by the buyer, the seller need only furnish a compliant affidavit at the time the contract is formed. The Stuhrs had the ability to prevent any conflict between the statute and their contract. They simply failed to do so.

¶ 66 After the Stuhrs provided the affidavit, the Vermas exercised their right to rescind within five days, and before closing. That they may have previously known about the easement, or had previously intended to proceed with the transaction despite that knowledge, was immaterial. Pursuant to the statute, the Vermas were entitled to rescind when they did, for any reason.

## 3. The Vermas Did Not Waive Their Right to Rescind

¶ 67 We also conclude that the affirmative defense of waiver is inapplicable to the undisputed facts of this case. The Stuhrs contend that the Vermas expressly waived the right to rescind under the statute because they were sophisticated buyers who agreed to purchase the property "as is." As an initial matter, we note that the statute does not distinguish between sophisticated and unsophisticated buyers.

¶ 68 Waiver is the intentional relinquishment of a known right. *Jones v. Cochise County*, 218 Ariz. 372, 379, ¶ 22, 187 P.3d 97, 104 (App.2008). "It is well settled that most rights may be waived." *McClellan Mortgage Co. v. Storey*, 146 Ariz. 185, 188, 704 P.2d 826, 829 (App.1985) (citing Estate of Henry, 6 Ariz.App. 183, 430 P.2d 937 (1967)). We have permitted the waiver of statutory rights by their intended beneficiaries in many circumstances, *Herstam v. Deloitte & Touche, LLP*, 186 Ariz. 110, 115–16, 919 P.2d 1381, 1386–87 (App.1996) (listing cases), though a statutory right may not be waived where waiver is expressly or impliedly prohibited by the plain language of the statute. *Swanson v. Image Bank, Inc.*, 206 Ariz. 264, 268, ¶ 13, 77 P.3d 439, 443 (2003) (discussing waiver of rights under employment statutes).

¶ 69 "Waiver of a right requires a clear showing of intent to waive that right." *Servs. Holding Co. v. Transamerica Occidental Life Ins. Co.*, 180 Ariz. 198, 206, 883 P.2d 435, 443 (App.1994) (citing *Societe Jean Nicolas Et Fils v. Mousseux*, 123 Ariz. 59, 61, 597 P.2d 541, 543 (1979)). Express waiver of a statutory right, however, need not recite exactly the right being waived; it is sufficient if the language of waiver clearly conflicts with the right and thereby demonstrates the beneficiary's intent to waive. *McClellan Mortgage Co.*, 146 Ariz. at 189, 704 P.2d at 830.

¶ 70 Section 33–422 neither expressly nor impliedly prohibits waiver, and we do not doubt that a buyer may waive the protec-

tion of the statute if it wishes to do so. Here, however, the purchase agreement provided, "Purchaser warrants and acknowledges that Purchaser is purchasing the property on an 'as-is' basis, except as specifically warranted." From this, it cannot fairly be said that the Vermas demonstrated an intent to waive their *rescission* rights under A.R.S. § 33–422. No mention is made of the statute or of the affidavit of disclosure, and the language used is too general to conflict with the statute's specific provisions.

## 4. Rescission Did Not Entitle the Vermas to the Return of the Extension Fees

¶ 71 In their cross-appeal, the Vermas argue that the trial court erred in excluding from their damages the amount they paid in extension fees.[9] The trial court held that separate consideration, the extension of time to perform, was given for those payments. We agree.

¶ 72 The Vermas argue that under Arizona law, rescission requires placing the parties in the positions they were in before executing the contract. They further argue that the extension fees are no different than the earnest money deposit, which had become nonrefundable, but which the court ordered returned as rescission damages.

¶ 73 The Vermas are correct that rescission is meant to restore the parties to their pre-contract status. *Grand v. Nacchio*, 214 Ariz. 9, 19, ¶ 27, 147 P.3d 763, 773 (App. 2006). However, a contract may be partially rescinded when the contract is divisible or severable. *Jones v. CPR Div., Upjohn Co.*, 120 Ariz. 147, 153, 584 P.2d 611, 617 (App. 1978). A contract may be considered severable when the consideration given is not single, but apportioned. *Id.* When separate consideration is given for a portion of a contract, that part of the contract may be considered severable. *Id.* at 154, 584 P.2d at 618.

¶ 74 Here, the purchase agreement and its amendments expressly provided that the extension payments were in addition to the purchase price and were to be paid to the Stuhrs for the extension of the closing date. The purchase agreement and amendments further provided that any extension payments would be deemed nonrefundable. The purchase agreement therefore supports the trial court's conclusion that the funds were given for consideration independent of the underlying contract. Accordingly, the separate extension agreements are severable from the underlying contract for purposes of rescission of that contract.

¶ 75 We affirm the trial court's ruling excluding the extension fees paid from any judgment awarded to the Vermas on their rescission claim.

## 5. The Trial Court Did Not Abuse Its Discretion In Denying the Stuhrs' Rule 60(c) Motion

¶ 76 The Stuhrs argue that the trial court wrongly denied their Rule 60(c) motion to set aside the judgment. We review a trial court's decision denying a motion to set aside a judgment for an abuse of discretion and affirm "unless 'undisputed facts and circumstances require a contrary ruling.'" *City of Phoenix v. Geyler*, 144 Ariz. 323, 330, 697 P.2d 1073, 1080 (1985) (quoting *Coconino Pulp & Paper Co. v. Marvin*, 83 Ariz. 117, 121, 317 P.2d 550, 552 (1957)). Because the motion did not raise any substantive issues not available at the time of the court's grant of summary judgment, we conclude that the trial court did not abuse its discretion in denying it.

## CONCLUSION

¶ 77 We reverse the judgment of the superior court with respect to the rescission of the transactions in *Tilley Farms* and *Dougherty* and remand for entry of judgment in

---

9. The Vermas argue that their cross-appeal is from the denial of a motion for relief from judgment. Though the Vermas filed a motion for reconsideration of the trial court's decision on extension fees, they did not file a motion for relief from the judgment. The Stuhrs argue that the Vermas are appealing from the denial of their motion for summary judgment, which is not an appealable order. *McCallister Co. v. Kastella*, 170 Ariz. 455, 457, 825 P.2d 980, 982 (App. 1992). We conclude that the Vermas have properly preserved an appeal from the trial court's effective grant of summary judgment to the Stuhrs on the issue of the extension fees.

favor of the sellers. We affirm the superior court's judgment in *Stuhr*. In our discretion, we award fees to Tilley and the Doughertys pending their compliance with ARCAP 21(c). Because neither the Vermas nor the Stuhrs prevailed in their appellate efforts, we decline to award fees in that matter.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge and PATRICK IRVINE, Judge.