IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

FIRST FINANCIAL BANK, N.A., as Successor in Interest to the Federal
Deposit Insurance Corporation, as Receiver of Irwin Union Bank F.S.B.,
*Plaintiff/Appellee*,

*v.*

THEODORE F. CLAASSEN, an unmarried man, *Defendant/Appellant*.

No. 1 CA-CV 14-0123
FILED 8-13-2015

Appeal from the Superior Court in Maricopa County
No. CV2010-032991
The Honorable John Rea, Judge

**REVERSED IN PART; AFFIRMED IN PART; REMANDED**

COUNSEL

Minkin & Harnisch, PLLC, Phoenix
By Ethan B. Minkin, Sara V. Ransom, Andrew A. Harnisch
*Counsel for Plaintiff/Appellee*

Brooks & Affiliates, PLC, Mesa
By David P. Brooks, Spenser W. Call
*Counsel for Defendant/Appellant*

**OPINION**

Judge Jon W. Thompson delivered the Opinion of the Court, in which
Presiding Judge Andrew W. Gould and Judge Maurice Portley joined.

**T H O M P S O N**, Judge:

¶1        This appeal follows a bench trial on a deficiency action following a judicial foreclosure.  Appellant Theodore F. Claassen (Claassen) asserts that the trial court erred in determining that there was a non-purchase, non-construction, money deficiency of $1,119,676.67 under Arizona Revised Statutes (A.R.S.) § 33-729(A) (2014) which successor-lender First Financial Bank, N.A. (Bank) was entitled to pursue.[1]  We agree as to $914,403.33 of the damages and, therefore, reverse in part and remand.

## FACTUAL AND PROCEDURAL HISTORY

¶2        The real property at issue is in a planned community in Paradise Valley.   In April 2008, Claassen was extended credit in an original principal amount not to exceed $5,500,000 (loan) for the construction of a single family dwelling.  Of that $5,500,000 approximately $1.7 million was used to satisfy the original purchase money loan and the balance was placed into a construction loan account from which draws were to be made. The total amount Bank loaned Claassen was over $3,000,000.  A promissory note was executed and the loan was secured by a deed of trust.  In October 2008, the loan was modified to change the payment terms and completion date.   Construction on the property was never completed. After October 2009, Claassen failed to make any payments and the Bank notified Claassen of the default in April 2010.   Bank filed a complaint for breach and judicial foreclosure in December 2010[2]; the debt at that time was at least $3,056,144.59 plus accruing interest, costs, fees, and attorneys' fees.   Bank further alleged other material actions, or inactions, by Claassen that likewise put him in default including his failure to provide current financials as requested by the FDIC.   Claassen in his answer asserted counterclaims against Bank for breach of contract, breach of covenant of good faith and fair dealing, and fraud.

---

[1] The original lender was Irwin Union Bank, F.S.B., however, herein we will refer to the successor-lender First Financial.

[2] Other junior lienholders, including the homeowner's association, contractors, and the Arizona Department of Revenue, were also named in the complaint.

¶3　　　　A trial date was set for July 2013. Claassen did not participate in the preparation of the joint pretrial statement.[3] In the pretrial statement, Bank asserted that if the property were allowed to be sold at a trustee's sale, based on the appraisal of the fair market value of $750,000, there would be a remaining deficiency in excess of $3,000,000. The Bank sought a deficiency judgment in the amount of $1,119,676.67. Specifically:

　　　　a. $205,273.43 in interest-only payments paid out of a reserve account during the construction period;

　　　　b. $50,000 mandatory construction deposit paid to the homeowner's association before building commenced;

　　　　c. $706,270.78 of accrued interest; and

　　　　d. $158,132.46 in late fees on the loan.

¶4　　　　A bench trial proceeded without Claassen or his counsel. The court found that Claassen had had appropriate notice of the proceedings "and has chosen not to participate." After receiving evidence, the trial court dismissed Claassen's counterclaims for lack of proof and entered a judgment of judicial foreclosure. The court additionally stated "The Court finds that based on the total amount owed, there is a non-purchase, non-construction money deficiency in the amount of $1,119,676.67. Upon conclusion of the foreclosure sale, any amount in excess of $710,000 [the fair market value] shall be credited to Defendant against the deficiency judgment." The trial court awarded Bank attorneys' fees and costs in the amount of $255,753.72.

¶5　　　　Claassen filed a Motion for New Trial or to Alter or Amend the Judgment. The basis for the motion was that the damages were not recoverable under the anti-deficiency statute and/or that the trial court erred in concluding that the majority of the damages were not purchase money sums. Claassen did not claim in that motion that the $205,273.43 in reserve interest payments was awarded in error.[4]

---

[3] The joint pretrial statement was submitted by Bank and the homeowner's association. The two parties settled prior to trial.

[4] Claassen does not challenge the interest reserve amount on appeal, therefore we need not decide it.

¶6 The trial court denied Claassen's Motion for New Trial. In its minute entry, the trial court mentioned Claassen's appearances at early court proceedings, and that Claassen's counsel withdrew in August 2012. After that point Claassen did not appear or participate in litigation, he did not participate in the hearing setting the trial date, in the trial management conference or in the preparation of the pretrial statement.[5] On the legal question, the court stated it was aware of the "factual and legal issues concerning what amount of the deficiency was and what amount of the deficiency was within the scope of the anti-deficiency statute and what amount was not." The court went on to say: "Mr. Claassen's motion argues that amounts included in the judgment were for purchase money or construction. These arguments raise evidentiary and legal issues that Mr. Claassen did not present at trial." The court found his arguments waived for failure to raise them previously. Claassen filed a timely notice of appeal and we have jurisdiction.

**DISCUSSION**

¶7 Claassen raises two issues on appeal from the denial of his motion for a new trial:

a. Whether the trial court erred in ruling that accrued interest, late fees, and the construction deposit paid to the homeowner's association were non-purchase money sums as a matter of law; and

b. Whether the trial court erred in finding Claassen waived any argument regarding the deficiency because he did not raise it prior to the motion for new trial.

¶8 Our standard of review for denial of a motion for new trial is abuse of discretion. *Suciu v. Amfac Distributing Corp.*, 138 Ariz. 514, 520, 675 P.2d 1333, 1339 (App. 1983). We defer to the trial court's factual findings unless clearly erroneous. *See Ahwatukee Custom Estates Mgmt. Ass'n v. Turner*, 196 Ariz. 631, 634, ¶ 5, 2 P.3d 1276, 1279 (App. 2000). We review the interpretation and application of statutes de novo. *Schwarz v. City of Glendale*, 190 Ariz. 508, 510, 950 P.2d 167, 169 (App. 1997) (citation omitted). A trial court abuses its discretion if it commits an error of law. *Flying*

---

[5] The court noted three minute entries from November 2012 to late January 2013 were mailed to Claassen at the address on file and had not been returned.

*Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, 50, ¶ 27, 156 P.3d 1149, 1155 (App. 2007).

¶9        The anti-deficiency statute, A.R.S. § 33-729, reads in relevant part:

> **A.** Except as provided in subsections B and C of this section, if a mortgage is given to secure the payment of the balance of the purchase price, or to secure a loan to pay all or part of the purchase price, of a parcel of real property of two and one-half acres or less which is limited to and utilized for either a single one-family or single two-family dwelling, the lien of judgment in an action to foreclose such mortgage shall not extend to any other property of the judgment debtor, nor may general execution be issued against the judgment debtor to enforce such judgment, and if the proceeds of the mortgaged real property sold under special execution are insufficient to satisfy the judgment, the judgment may not otherwise be satisfied out of other property of the judgment debtor, notwithstanding any agreement to the contrary.

¶10        At issue is what constitutes purchase money subject to protection under the statute. We considered what is purchase money and non-purchase money under the statute for purposes of a deficiency judgment in *Helvetica Servicing, Inc. v. Pasquan,* 229 Ariz. 493, 277 P.3d 198 (App. 2012). *Helvetica* was a judicial foreclosure involving the refinancing of a loan for the tear-down and construction of a new luxury residence. *Id.* at 495, ¶¶ 3-5, 277 P.3d at 200. Following the new construction, some loan proceeds remained which the homeowners used to pay interest on the loan as well as "landscaping, maintenance, taxes, utilities and marketing fees." *Id.* This court held that refinancing a purchase money loan did not change its character and the anti-deficiency protections still applied. *Id.* at 499, ¶ 23, 277 P.3d at 204 (*citing Bank One, Arizona v. Beauvais*, 188 Ariz. 245, 250, 934 P.2d 809, 814 (App. 1997)). We further found that construction loans for construction of a qualifying residence merited anti-deficiency protection. *Id.* at 501, ¶ 32, 277 P.3d at 206. Most pertinent to this matter, however, we also found "to the extent a judicially foreclosed mortgage includes both purchase money and non-purchase money sums, a lender may pursue a deficiency judgment for the latter amounts" where the non-purchase money sums could be traced and segregated. *Id.* at 501-02, ¶¶ 34, 37, 277 P.3d at 206-07. Bank asserts, and the trial court agreed, that this is such a case. We disagree.

¶11 In *Helvetica*, we outlined the policy arguments and the three possible outcomes when a mortgage secures both purchase money and non-purchase money sums and we need not repeat them here. In *Helvetica*, however, we noted there were "payments that clearly [were] not purchase money in nature, including sums for maintenance, utilities, marketing fees, and penalties." 229 Ariz. at 501, ¶ 34, 277 P.3d at 206. This case does not involve items that are "clearly not" purchase money items.

¶12 Here, Bank asserts that costs typically associated with a loan, such as interest and late fees, constitute non-purchase money. Two of the line items are for costs accrued once the loan was funded (interest and late fees) and one is for the $50,000 spent to fund the deposit the homeowner's association required prior to any construction being undertaken on the property.

¶13 In *Helvetica*, we consulted the commentary of Charles Sheppard in concluding that a refinanced purchase money obligation should be a protected purchase money obligation. Charles B. Sheppard, *California Code of Civil Procedure Section 580B, Anti–Deficiency Protection Regarding Purchase Money Debts: Arguments for the Inclusion of Refinanced Purchase Money Obligations Within the Anti–Deficiency Protection of Section 580B*, 6 S. Cal. Interdisc. L.J. 245, 269 (1997) (examining California's statutory anti-deficiency scheme). That same commentator included interest on a refinanced loan as part of the purchase money obligation. Sheppard, 6 S. Cal. Interdisc. L.J. at 271 "Hence, to the extent of the principal amount [] and any interest which may have accrued thereon, it should have been concluded by the court that the [] loan was a purchase money obligation.").

¶14 We find the reasoning that allows a refinancing to be deemed a purchase money obligation allows the costs commonly associated with a loan to likewise be considered purchase money sums. When a home loan is being refinanced those types of charges are routinely rolled into the new loan.

¶15 In *Helvetica,* we did not reach the question whether interest payments on a refinanced loan would be a purchase money item.[6] We do

---

[6] "The Helvetica Loan likely includes additional non-purchase money sums, including interest payments to Helvetica of $32,555 per month. However, the record on appeal is not sufficiently developed for us to opine further regarding this issue." 229 Ariz. at 501, ¶ 34, fn7, 277 P.3d at 206.

reach that question now and conclude that interest, late fees, and the mandatory construction deposit are properly considered purchase money obligations.

¶16        Next, we must determine whether Claassen waived his arguments by first raising them in his post-trial motion. In ruling on the motion for a new trial the trial court specifically found Claassen had waived any claim that any of the charges should have been found to be non-purchase money sums. The minute entry stated the court was aware of the "factual and legal issues concerning what amount of the deficiency was and what amount of the deficiency was within the scope of the anti-deficiency statute and what amount was not." The court went on to say "Mr. Claassen's motion argues that amounts included in the judgment were for purchase money or construction. These arguments raise evidentiary and legal issues that Mr. Claassen did not present at trial."

¶17        The record on appeal does not include transcripts of either the bench trial or the oral argument, a situation which commonly results in our assumption that the trial court's factual determinations would have been supported. *See Baker v. Baker*, 183 Ariz. 70, 73, 900 P.2d 764, 767 (App. 1995). Below, however, the facts as to the type of charges and the amounts sought by Bank were undisputed. The amounts found by the trial court are exactly as enumerated in the Bank's Joint Pretrial Statement and are not challenged on appeal. The factual issues not being in dispute, we proceed to the legal issue.

¶18        "Waiver is the intentional relinquishment of a known right." *Verma v. Stuhr*, 223 Ariz. 144, 157, ¶ 68, 221 P.3d 23, 36 (App. 2009) (holding property buyers did not waive their statutory right to rescind). A statutory right may not be waived "where waiver is expressly or impliedly prohibited by the plain language of the statute." *Id.*

¶19        Our legislature has expressly prohibited borrowers from agreeing to waive the protections of the anti-deficiency statutes in foreclosures on certain residential dwellings. In judicial foreclosures such as the one here, A.R.S. § 33–729(A) expressly prohibits such waivers by stating that if the proceeds of the execution sale "are insufficient to satisfy" the debt, it "may not otherwise be satisfied out of other property of the judgment debtor, *notwithstanding any agreement to the contrary*." (Emphasis added.) In foreclosures under a deed of trust, such waivers are similarly prohibited. *See* A.R.S. § 33–814(G) (2014) ("no action may be maintained to recover any difference between the amount obtained by sale and the amount of the indebtedness and any interest, costs and expenses").

¶20      For policy reasons, our courts have been expansive as to what other protections cannot be waived under anti-deficiency statutes. *See CSA 13-101 Loop, LLC v. Loop 101, LLC*, 233 Ariz. 355, 362, ¶ 24, 312 P.3d 1121, 1128 (App. 2013) (holding public policy prohibits waiver of fair market determination under A.R.S. § 33–814(A)); *Parkway Bank and Trust Co. v. Zivkovic*, 232 Ariz. 286, 290–91, ¶ 17, 304 P.3d 1109, 1113–14 (App. 2013) (borrowers cannot waive the statutory anti-deficiency protection of A.R.S. § 33-814(G)).

¶21      "Parties cannot stipulate as to the law applicable to a given state of facts and bind the court" since the court has an independent duty to correctly apply the law. *State Consol. Pub. Co. v. Hill*, 39 Ariz. 163, 164, 4 P.2d 668, 669 (1931). Because a party cannot waive the correct application of the law, the trial court should have granted Claassen's motion.

¶22      We thus hold that the statutory scheme does not permit the anti-deficiency protection of A.R.S. § 33–729(A) to be waived.[7] The trial court erred in finding that Claassen waived those protections, and therefore erred in applying the law as set out above interpreting what constitutes "purchase money" funds as a matter of law. We reverse that determination as to accrued interest on the principal ($706,270.78), late fees ($158,132.46),

---

[7] The Arizona Legislature has since amended A.R.S. §§ 33-729 and -814 to prevent borrowers from claiming anti-deficiency protection in certain situations. The new A.R.S. § 33-729 includes the following language:

> **C.** For mortgages that are originated after December 31, 2014, subsection A of this section does not apply to real property as follows:
>
> 1. Real property owned by a person who is engaged in the business of constructing and selling dwellings that was acquired by the person in the course of that business and that is subject to a mortgage given to secure payment of a loan for construction of a dwelling on the property for sale to another person.
>
> 2. Real property that contains a dwelling that was never substantially completed.
>
> 3. Real property that contains a dwelling that is intended to be utilized as a dwelling but that is never actually utilized as a dwelling.

and the $50,000 construction deposit. We, likewise, vacate the trial court's award of attorneys' fees and costs in the amount of $255,753.72 for reconsideration in light of our opinion.

## ATTORNEYS' FEES AND COSTS

**¶23**        On appeal, both parties seek attorneys' fees and costs. Bank seeks fees pursuant to A.R.S. §§ 12-341, -341.01 (2003) and asserts Claassen failed to indicate the statutory basis for his fee request. We agree. Neither party is awarded fees on appeal. As the prevailing party on appeal, Claassen is entitled to his costs pursuant to A.R.C.A.P. 21.

## CONCLUSION

**¶24**        For the proceeding reasons, we reverse the trial court's determination that $914,403.33 of the $1,119,676.67 is non-purchase money obligations and remand for a judgment consistent with this determination. We reverse the award of fees and costs below. The balance of the judgment is affirmed.



Ruth A. Willingham · Clerk of the Court
F I L E D : RT