65 P.3d 463

**STATE of Arizona, Appellee,**

v.

**Gerald KAISER, Appellant.**

**No. 1 CA–CR 02–0448.**

Court of Appeals of Arizona, Division 1, Department D.

April 1, 2003.

---

**516**

David A. Pennartz, Scottsdale City Attorney by James Neugebauer, Assistant City Prosecutor, Scottsdale, Attorneys for Appellee.

Peterson & Peterson by Chris Peterson, Phoenix, Attorneys for Appellant.

## OPINION

EHRLICH, Presiding Judge.

¶ 1 Gerald Kaiser appeals his conviction for refusing to obey a peace officer,[1] a class 1 misdemeanor violation of Scottsdale City Code section ("Code § ") 19–13. He contends that the regulation is unconstitutional because it is both vague and overbroad, thereby denying him due process in violation of the Fourteenth Amendment to the United States Constitution.[2] For reasons that follow, we hold that the ordinance is constitutional.

---

1. A "peace officer" is "any person vested by law with a duty to maintain public order and make arrests." ARIZ.REV.STAT. § 13–105(25)(2001).

2. The Due Process Clause of the Arizona Constitution is construed similarly to the same clause in the United States Constitution. *Simat Corp. v. Ariz. Health Care Cost Containment Sys.,* 203 Ariz. 454, 464 ¶ 47, 56 P.3d 28, 38 (2002)(Berch,

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Two Scottsdale peace officers stopped a car after an officer suspected that the driver, Kaiser's wife, was intoxicated. Kaiser was a passenger. When his wife got out of the car to talk with one officer, Kaiser yelled at his wife to not answer any questions or perform any field-sobriety tests. Then, despite being told by the other officer to remain in the car, Kaiser got out and attempted to approach his wife and the investigating officer. The officers repeatedly instructed Kaiser not to interfere with the investigation and to get back in the vehicle, and, when he failed to comply, they told him to return to the car or he would be arrested. Kaiser persisted, repeatedly defying their orders. Eventually, he was arrested for failing to return to and remain in the car when told to do so and for interfering with the investigation. Throughout the incident, Kaiser appeared to the officers to be angry, disruptive, aggressive and profane, making comments that the officers interpreted as threats.

¶ 3 Charged with refusing to obey a peace officer, Kaiser was convicted in Scottsdale City Court for having violated Code § 19–13, which provides in pertinent part that "[n]o person shall refuse to obey a peace officer engaged in the discharge of his duty." He appealed his conviction to the Maricopa County Superior Court, ARIZ.REV.STAT. ("A.R.S.") § 22–371 (2002), insisting that the law is vague and overbroad. The court rejected his argument and affirmed his conviction, finding that the ordinance was not vague and that Kaiser had no standing to complain that the ordinance is overbroad. Kaiser brought the same challenge to this court. A.R.S. § 22–375(A)(2002).

## DISCUSSION

¶ 4 Because this matter originated in municipal court, our jurisdiction is limited to

J., dissenting); *State v. Bible,* 175 Ariz. 549, 594, 858 P.2d 1152, 1197 (1993), *cert. denied,* 511 U.S. 1046, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994). *See* S.G. Feldman & D.L. Abney, *The Double Security of Federalism: Protecting Individual Liberty Under the Arizona Constitution,* 20 ARIZ. ST. L.J. 115 (Spring 1988).

a review of the facial validity of the ordinance. *State v. Alawy*, 198 Ariz. 363, 364 ¶ 3, 9 P.3d 1102, 1103 (App.2000); *State v. Singer*, 190 Ariz. 48, 50, 945 P.2d 359, 361 (App. 1997). Accordingly, if the regulation is facially valid, we do not proceed to analyze how it was applied to the individual defendant. *Alawy*, 198 Ariz. at 364 ¶ 3, 9 P.3d at 1103.

¶ 5 Before we determine whether an ordinance is facially valid, however, we must first address whether a defendant has standing to challenge the constitutionality of the ordinance. *Id.* at 364 ¶ 6, 9 P.3d at 1103. "Even if an ordinance or statute is vague in some particulars, a person 'to whose conduct a statute clearly applies may not successfully challenge it for vagueness.' " *Id.* (quoting *State v. Trachtman*, 190 Ariz. 331, 334, 947 P.2d 905, 908 (App.1997)(quoting *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974))). *See State v. McLamb*, 188 Ariz. 1, 6, 932 P.2d 266, 271 (App.1996), *cert. denied*, 522 U.S. 814, 118 S.Ct. 60, 139 L.Ed.2d 23 (1997). Even so, "[u]nder some circumstances, litigants whose own activities are constitutionally unprotected can nonetheless challenge a statute as overbroad if the law 'substantially abridges the First Amendment rights of other parties not before the court.' " *State v. Musser*, 194 Ariz. 31, 32 ¶ 5, 977 P.2d 131, 132 (1999)(quoting *Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 634, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980)).

¶ 6 Peace officers may "take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo" during an investigatory stop. *United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). Kaiser does not contest the validity of the traffic stop or that the officers could properly investigate whether his wife was driving under the influence of alcohol. He does not contest that the officers were engaged in the discharge of their duties. He does not deny that he got out of his car several times and attempted to approach his wife and the investigating officer despite being told repeatedly to return to and remain in his vehicle and not interfere with the investigation. He complains only that the ordinance he violated is itself a violation of his constitutional right to due process.

¶ 7 Kaiser's conduct falls within the activity regulated by Code § 19–13 such that it cannot be said that the ordinance is facially vague or overbroad regardless of any theoretical unconstitutional application of the ordinance to others not before the court. Nevertheless, we may consider Kaiser to have standing and so we address the constitutionality of the ordinance.

¶ 8 The constitutionality of a statute is reviewed *de novo*. *Ariz. Dep't of Pub. Safety v. Superior Court (Falcone)*, 190 Ariz. 490, 494, 949 P.2d 983, 987 (App.1997). When an ordinance is challenged as being vague or overbroad, there is a strong presumption that it is constitutional, *Singer*, 190 Ariz. at 50, 945 P.2d at 361, and we will, if possible, interpret the regulation in such a way as to render it constitutional. *Alawy*, 198 Ariz. at 364 ¶ 5, 9 P.3d at 1103; *McLamb*, 188 Ariz. at 5, 932 P.2d at 270. In this regard, we give the language its plain and ordinary meaning. *Alawy*, 198 Ariz. at 365 ¶ 8, 9 P.3d at 1104. *See* A.R.S. § 1–213 ("Words and phrases shall be construed according to the common and approved use of the language."). It is the person challenging the enactment who bears the burden of establishing the contrary proposition. *Id.* at 364 ¶ 5, 9 P.3d at 1103; *Singer*, 190 Ariz. at 50, 945 P.2d at 361; *McLamb*, 188 Ariz. at 5, 932 P.2d at 270.

¶ 9 "A legislative enactment is unconstitutionally vague if it does not give persons of ordinary intelligence a reasonable opportunity to learn what it prohibits and does not provide explicit standards for those who will apply it." *McLamb*, 188 Ariz. at 5, 932 P.2d at 270 (quoting *State v. Takacs*, 169 Ariz. 392, 394, 819 P.2d 978, 980 (App.1991)). *See Singer*, 190 Ariz. at 50, 945 P.2d at 361 (citing *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)). However, the requirement of a "fair and definite warning" does not necessitate "perfect notice or absolute precision" of language. *Singer*, 190 Ariz. at 50, 945 P.2d at 361 (quoting *State v. Phillips*, 178 Ariz. 368, 370, 873 P.2d 706, 708 (App.1994)). *See Grayned*

*v. City of Rockford,* 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

> The Constitution only requires that language convey a sufficiently definite warning as to proscribed conduct when measured by common understanding and practices. That there will be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense.

*McLamb,* 188 Ariz. at 5, 932 P.2d at 270 (quoting *State v. Cota,* 99 Ariz. 233, 236, 408 P.2d 23, 26 (1965)).

¶ 10 Kaiser argues that Code § 19–13 is vague because no *mens rea* is required. He adds that, under the ordinance, "every contact between the police and the public provides the potential of an arrest for declining to obey whatever a policeman may decide he wants" resulting in arrest and conviction at the "whim" of the officer whether the failure to comply is intentional or not.

¶ 11 First, the ordinance does contain a *mens rea* requirement: It requires that a person "refuse" to obey an order. To refuse an order is an affirmative act of rejection, not a bare failure to obey but a knowing and deliberate decision to not obey.[3] Absent a refusal to obey, as opposed to a mere failure to obey, there can be no violation of the ordinance.

¶ 12 Second, as Code § 19–13 provides, the order must be one of "a peace officer engaged in the discharge of his duty." While the Scottsdale City Code does not define "peace officer" or "discharge of duty," the Arizona legislature has defined a "peace officer" to be "any person vested by law with a duty to maintain public order and make arrests," A.R.S. § 13–105(25), and this duty can only be accomplished through the lawful enforcement of state and local laws. In other words, there is no violation of Code § 19–13 if the order that is refused is not one made in connection with the discharge of the duties of the peace officer. A legislative

enactment "is not void for vagueness 'simply because it may be difficult to determine how far one can go before the statute is violated.' " *McLamb,* 188 Ariz. at 5, 932 P.2d at 270 (quoting *Phillips,* 178 Ariz. at 370, 873 P.2d at 708)(quoting *Berenter v. Gallinger,* 173 Ariz. 75, 81, 839 P.2d 1120, 1126 (App. 1992)).

¶ 13 Kaiser relies heavily on *City of Chicago v. Morales,* 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999), in which the Supreme Court found facially invalid an ordinance that provided that, if a police officer reasonably believed that at least one of two or more persons present in a public place was a member of a "criminal street gang" and that the persons were loitering by remaining in a place "with no apparent purpose," the officer must order all the persons to disperse "from the area." However, the analysis is fully distinguishable from that pertinent to this case.

¶ 14 In *Morales,* the Court first noted that "the freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment," *id.* at 53, 119 S.Ct. 1849, and that "[i]t is difficult to imagine how any citizen of the city of Chicago standing in a public place with a group of people would know if he or she had an 'apparent purpose.' " *Id.* at 56–57, 119 S.Ct. 1849. Additionally, the ordinance provided no advance notice to any "putative loiterer" to protect him from being ordered to disperse, and it provided no guidance as to how long a loiterer must remain away, how far away he must move or when he could regroup with the other loiterers before being asked to disperse once more without being subject to arrest. *Id.* at 59, 119 S.Ct. 1849. In other words, the ordinance failed to give adequate notice of what was forbidden and what was permitted. *Id.* at 60, 119 S.Ct. 1849.

¶ 15 Also, as found by the Court in *Morales,* there were no guidelines for enforcement. *Id.* The police were given "absolute

---

**3.** "Refuse" means "[t]o deny, decline, reject." Black's Law Dictionary 1282 (6th ed.1990). The act of refusal is one of will; in contrast, "fail" may be an act of inevitable necessity. *Maestas v.*

*Am. Metal Co. of N.M.,* 37 N.M. 203, 20 P.2d 924, 925 (1933)(citing *Taylor v. Mason,* 22 U.S. (9 Wheat.) 325, 344, 6 L.Ed. 101 (1824)).

discretion" to determine what constituted loitering in violation of the ordinance. *Id.* at 61, 119 S.Ct. 1849. "Presumably an officer would have discretion to treat some purposes-perhaps a purpose to engage in idle conversation or simply to enjoy a cool breeze on a warm evening—as too frivolous to be apparent if he suspected a different ulterior motive." *Id.* at 62, 119 S.Ct. 1849.

¶ 16 The ordinance in *Morales* is in no way comparable to the Scottsdale ordinance. A person of ordinary intelligence will understand what the Scottsdale ordinance prohibits and in what context that conduct may be prohibited. Further, Code § 19–13 provides sufficient objective standards for one charged with its enforcement to know what conduct is unlawful. Finally, the ordinance does not encourage arbitrary enforcement. It is not unconstitutionally vague.

¶ 17 Kaiser also complains that Code § 19–13 is void for overbreadth. "An overbroad statute is one designed to burden or punish activities which are not constitutionally protected, but ... includes within its scope activities which are protected by the First Amendment." *McLamb,* 188 Ariz. at 9, 932 P.2d at 274 (quoting *State v. Baldwin,* 184 Ariz. 267, 269, 908 P.2d 483, 485 (1995)) (quoting *State v. Jones,* 177 Ariz. 94, 99, 865 P.2d 138, 143 (App.1993)) (internal quotations omitted)(alteration original). But, as noted by the Court in *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), "where conduct and not merely speech is involved ... the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *See McLamb,* 188 Ariz. at 9, 932 P.2d at 274. "There must be a realistic danger that the statute will *significantly* jeopardize recognized first amendment protections of individuals not before the court." *McLamb,* 188 Ariz. at 10, 932 P.2d at 275 (quoting *State v. Steiger,* 162 Ariz. 138, 144, 781 P.2d 616, 622 (App.1989) (citation omitted)(emphasis original)).

¶ 18 We discern no realistic danger that Code § 19–13 will significantly put at risk the First Amendment rights of those persons not before the court. The refusal to obey a legitimate order of a sworn peace officer does not implicate the constitutional rights of a person. Certainly the mere possibility that some impermissible application can be conceived is not sufficient to render a statute overbroad. *Id.*

¶ 19 Kaiser also relies on *Shuttlesworth v. City of Birmingham,* 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965), in which the Court needed to address the issue of the overbreadth of a city regulation in only a passing manner. The ordinance provided that "[i]t shall be unlawful for any person to refuse or fail to comply with any lawful order, signal or direction of a police officer." The Court found that "the literal terms of this ordinance are so broad as to evoke constitutional doubts of the utmost gravity" but noted that the lower court had confined the ordinance to a relatively narrow scope. *Id.* at 93, 86 S.Ct. 211. This was the extent of the court's discussion of overbreadth with regard to this ordinance, and, significantly, the Court did not determine that the ordinance was unconstitutional. Rather, it disposed of the matter on the basis that there was no evidence to support the conviction because the officer was not engaged in the direction of vehicular traffic, a prerequisite for the enforcement of that ordinance. *Id.* at 95, 86 S.Ct. 211. Unlike the present case, there was no evidence that the defendant had refused or failed to comply with a lawful order.

## CONCLUSION

¶ 20 "There are areas of human conduct where, by the nature of the problems presented, legislatures simply cannot establish standards with great precision." *Smith v. Goguen,* 415 U.S. 566, 581, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). As was true in many of the cases discussed and cited above, this is such a case. The Scottsdale City Code Section 19–13 is constitutional as it is neither vague nor overbroad.

CONCURRING: SHELDON H. WEISBERG, Judge, and EILEEN S. WILLETT, Judge Pro Tempore.*