NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

DAVID WILLIAM CURTIS, JR., *Appellant*.

No. 1 CA-CR 11-0387
FILED 4-1-2014

---

Appeal from the Superior Court in Maricopa County
No. CR2010-005771-001 DT
The Honorable Paul J. McMurdie, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Robert A. Walsh
*Counsel for Appellee*

Joel Erik Thompson, Phoenix
*Co-Counsel for Appellant*

Bruce W. Griffin, Flagstaff
*Co-Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge John C. Gemmill and Judge Randall M. Howe joined.

_____

**T H U M M A**, Judge:

¶1        David William Curtis, Jr., appeals his convictions and sentences for fifteen counts of sexual exploitation of a minor and four counts of molestation of a minor. Finding no reversible error, the convictions and sentences are affirmed.

¶2        The charges arose from a private citizen's discovery of a flash drive in the parking lot of the Tempe Marketplace in May 2009. The flash drive contained multiple images of child pornography and was linked to Curtis. Further investigation resulted in the seizure of additional such images on digital media from Curtis' home and a car parked in his home driveway, including images depicting Curtis molesting a child.

¶3        Curtis, an attorney, represented himself at trial. Curtis defended on the basis that he had no sexual interest in children and had never molested a child; the evidence failed to prove he was ever in possession of the flash drive; the police might have planted images on the other media or manipulated data or the images might have been evidence left over from his years as an attorney representing clients that he had not destroyed.

¶4        Curtis testified at trial, stating that he did not recall seeing the images that formed the basis of the first ten counts in the indictment, but he had possessed items similar to the charged images in the course of representing clients facing criminal charges and in child-protection and custody cases. Curtis testified that he had had no such cases involving similar images after 2005, and that he had destroyed a chart linking evidence to the specific clients when he retired from the active practice of law in 2006. Curtis testified that none of the images had sexual stimulation as their purpose, he had never molested the child depicted in the images charged in Counts 12, 14 and 16, and the images in Counts 18 and 20, which gave rise to associated molestation counts, did not depict either him or the child identified as the victim. Curtis also testified that someone else might have planted the evidence for many of the counts.

¶5　　　　The jury convicted Curtis of nineteen of the twenty counts he faced and the superior court sentenced him to ten years on each count, to be served consecutively, for a total of 190 years in prison. Curtis filed a timely delayed notice of appeal and this court has jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031 and -4033(A)(1) (2014).[1]

## I.　　Duplicitous Indictment And Charge To The Jury.

¶6　　　　Curtis first argues that the indictment was duplicitous on its face because it failed to include the necessary specificity: that is, the exploitation counts failed to identify a digital address or pathway for the charged images and the molestation counts and the testimony to the grand jury regarding those counts failed to describe a specific act. Curtis also argues that the superior court failed to timely rule on his pretrial motion to dismiss on grounds of duplicity, thereby depriving him of an opportunity to correct these defects.

¶7　　　　After full briefing of his motion to dismiss, but before the superior court heard or decided the matter, Curtis withdrew the motion, stating "[w]ith the passing of over four months since the filing of the motion, the effect of the motion has been effectively mooted." By this conduct, Curtis waived the challenges he now presses about claimed flaws in the indictment. *See State v. Anderson*, 210 Ariz. 327, 335-36, ¶¶ 15-17, 111 P.3d 369, 377-78 (2005) (holding failure to object to alleged defects in indictment before trial waived any objection); *see also State v. Charo*, 156 Ariz. 561, 566, 754 P.2d 288, 293 (1988) (holding defendant invited any error in denial of motion to remand where motion denied as moot at defendant's request). Moreover, the indictment was sufficiently specific. *See generally* Ariz. R. Crim. P. 13.2. The indictment identified the elements of each offense charged; the individual image title relevant to each exploitation count (and in most cases, the location of the media on which it was found); the conduct giving rise to the molestation counts (as did the testimony presented to the grand jury) and implicitly paired them with the exploitation counts depicting the alleged molestation. *See State v. Far W. Water & Sewer Inc.*, 224 Ariz. 173, 187, ¶ 36, 228 P.3d 909, 923 (App. 2010) ("An indictment is legally sufficient if it informs the defendant of the essential elements of the charge, is definite enough to permit the

---

[1] Absent material revisions after the relevant dates, statutes cited refer to the current version unless otherwise indicated.

defendant to prepare a defense against the charge, and affords the defendant protection from subsequent prosecution for the same offense.").

¶8          Curtis also argues the State switched images and substituted other acts for the charged offenses, and that the superior court did not properly rule on evidentiary issues or properly instruct the jury, resulting in duplicitous charges being presented to the jury, with the resulting uncertainty that "the jurors unanimously agreed upon a single factual act or event" and risk of conviction for uncharged offenses. A criminal defendant has the constitutional right to a unanimous jury verdict. Ariz. Const. art. 2, § 23. The possibility of a less than unanimous verdict may occur when the indictment charges an offense based on one act, but the State offers evidence of a different act that satisfies the definition of the charged crime, a circumstance sometimes referred to as a duplicitous charge. *State v. Klokic*, 219 Ariz. 241, 244, ¶ 12, 196 P.3d 844, 847 (App. 2008). This court reviews the superior court's admission of evidence for abuse of discretion. *State v. Robinson*, 165 Ariz. 51, 56, 796 P.2d 853, 858 (1990). This court reviews the adequacy of jury instructions in their entirety to determine if they accurately reflect the law, *State v. Hoskins*, 199 Ariz. 127, 145, ¶ 75, 14 P.3d 997, 1015 (2000), recognizing that "[c]losing arguments of counsel may be taken into account when assessing the adequacy of jury instructions," *State v. Bruggeman*, 161 Ariz. 508, 510, 779 P.2d 823, 825 (App. 1989) (citation omitted).

¶9          The record does not support Curtis' argument that the State switched images and substituted other acts for the charged offenses. The verdict forms for the exploitation counts mirrored the indictment (as amended) by identifying the title of each of the charged images, the media on which the image was discovered and where that media was found, a procedure Curtis acknowledged at trial would "take care of the duplicitous issue." With three exceptions, the titles inscribed on the back of the hard copies of the charged images also mirrored the titles charged in the indictment and listed on the verdict forms. The three exceptions consisted of a typographical error (a single letter discrepancy) of no material significance, given the absence of any other images admitted at trial with the same title. Curtis has not shown that the single letter discrepancy involving these three charges (Counts 1, 2 and 20) resulted in the submission of duplicitous charges to the jury. Among other things, the jury asked about the single letter discrepancy in the name on the hard copy of the images for each of these three counts, and the superior court responded by referring them to the verdict forms.

¶10        Nor has Curtis shown the charges submitted to the jury were duplicitous because the jury asked during deliberations whether the molestation charges were associated with specific images. In response, after conferring with the parties, the superior court instructed the jury that it was to "rely on the evidence, argument of counsel and the instructions given." The verdict forms for the molestation counts identified the child's name and the sexual contact alleged consistent with the "to-wit" designation in the indictment.[2] Moreover, both parties linked each molestation count by evidence, testimony and argument to the charged image in the count depicting the molestation.

¶11        Similarly, Curtis has not shown that the superior court abused its discretion or created the risk of a less than unanimous verdict by allowing a detective to testify that the charged images were also found on other media seized pursuant to a search warrant, and by allowing the State to admit in evidence 23 uncharged images. As discussed in Section V below, the superior court acted within its discretion by admitting the uncharged images after Curtis opened the door to such evidence in claiming he possessed many of the images in his capacity as a lawyer, and by cross-examining the case agent on what evidence he could offer to show Curtis possessed the charged images. The distinction between the charged images, their discovery on other media and the uncharged images properly was maintained throughout trial, including in closing arguments.

¶12        The record fails to support Curtis' claims that the State misled the jury by allowing a forensic detective to switch titles in testifying about the image titles charged in Counts 12, 14, 18 and 20. On this record, the detective's reference when testifying about Count 14 to "cheare197.jpg," instead of the charged image of "cheare196.jpg" as identified in the prosecutor's question, is not evidence of a deliberate attempt by the State to switch images, but rather a slip of the tongue that was neither intentional nor significant in context. The detective's reference to the charged image in Count 20 ("$R619N0.jpg") as "$R6191NO," similarly was, at most, an insignificant mistake, particularly because only one image admitted at trial had this or a similar title.

---

[2] The type of sexual contact involved was omitted from the indictment and verdict form for Count 11, for which the related image in Count 12 depicted the child manipulating her own genitals.

¶13        Curtis also has failed to show that the superior court abused its discretion or created the risk of a less than unanimous verdict by allowing the detective to testify that he was able to discover the date that the deleted images in Counts 12, 18 and 20 were photographed, the so-called "EXIF" data, by searching for the files that would allow their retrieval from a computer recycle bin. The superior court acted within its discretion in finding that Curtis had opened the door to this evidence by highlighting the absence of EXIF data for the charged images in cross-examination. Finally, the court is not persuaded by Curtis' arguments, which he failed to raise during trial, that the State "falsified the forensic data" on the Nutcracker Suite 2006 photographs, that the State deliberately "changed the sequence" of these images in a trial exhibit and that the State added unrelated photographs without foundation, thereby misleading the jury.

¶14        The superior court properly instructed the jury that it was required to unanimously agree on each verdict, addressing each count separately. The jury instructions given, coupled with the verdict forms identifying the charged image or conduct and the parties' arguments in closing, ensured that the jury reached unanimous verdicts on all charges. On this record, the charges presented to the jury were not duplicitous.

## II.        Denial Of Motions To Suppress.

¶15        After Curtis filed various pretrial motions to suppress, the superior court held a four-day evidentiary hearing and then issued rulings. Curtis argues the court erred in denying five of his motions to suppress. In reviewing a denial of a motion to suppress, this court limits the review to the facts the superior court considered at the suppression hearing, *State v. Blackmore*, 186 Ariz. 630, 631, 925 P.2d 1347, 1348 (1996*)*, viewed in the light most favorable to sustaining the superior court's ruling, *State v. Hyde*, 186 Ariz. 252, 265, 921 P.2d 655, 668 (1996*)*. This court gives deference to the superior court's factual findings, but reviews de novo whether the Fourth Amendment was violated. *State v. Gonzalez–Gutierrez*, 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996). The superior court's ruling will be affirmed if legally correct for any reason. *State v. Canez*, 202 Ariz. 133, 151, ¶ 51, 42 P.3d 564, 582 (2002).

### A.        Initial Warrantless Search Of Flash Drive.

¶16        Curtis argues the superior court erred in denying his first motion to suppress, which sought to suppress evidence discovered in an initial warrantless police search of a computer flash drive. The flash drive

was found in a parking lot at the Tempe Marketplace by a private individual, who turned it over to the police after discovering what he described as "kiddie porn" on the flash drive. Curtis argues the police lacked proper cause to conduct a warrantless search of the flash drive, that the warrantless search was impermissible because it differed from and exceeded the scope of the preceding private search by the individual who found the flash drive and that the warrantless search should not have been allowed to determine ownership of the flash drive.

¶17        The Fourth Amendment guarantees the right to be secure against unreasonable searches and seizures, and provides that no warrants shall issue except upon probable cause. U.S. Const. amend. IV. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Although a person retains no privacy interests in abandoned property, *see Abel v. United States,* 362 U.S. 217, 241 (1960), a person retains some privacy interests in lost or misplaced property, which are outweighed by the government's interest in identifying and returning the property to its owner, *see Gudema v. Nassau Cnty.*, 163 F.3d 717, 722 (2d Cir. 1998).

¶18        The Fourth Amendment has no applicability to a search by a private individual not acting with the knowledge of, or as an agent for, the government. *Jacobsen*, 466 U.S. at 113. The government's subsequent searches are permissible to the extent they do not exceed the scope of the private search and thus do not "infringe any constitutionally protected privacy interest that had not already been frustrated as the result of private conduct." *Id.* at 115, 118-26 (holding government's warrantless removal of plastic bags from cardboard tube in box, and chemical testing of powder in innermost bag, was permissible because government's search did not reveal anything more than it already knew from private search, and testing did not infringe any constitutionally protected privacy interests). A government official's search of a computer disk does not exceed the scope of the prior private search simply because the government official examines more files than did the private party. *United States v. Runyan*, 275 F.3d 449, 464-65 (5th Cir. 2001) (holding, in case involving warrantless search of computer disks containing child pornography, that police did not exceed scope of private search by examining more files on each disk than did private search).

¶19        Based on the evidence and argument received at the four-day evidentiary hearing, the superior court found that the flash drive had been lost or misplaced, not abandoned. The court found that a private

party discovered the flash drive in a parking lot at the Tempe Marketplace and turned it over to police after reporting that he saw what he perceived to be "kiddie porn" on the flash drive. The court found that a police detective opened folders on the flash drive to determine whether the photographs viewed by the private party were in fact prohibited under Arizona law. The court further found that the objectionable material was apparent as soon as the detective viewed the folders on the flash drive. The court also found that the detective's warrantless search of the flash drive was no more extensive than the private party's search.

¶20        The superior court did not abuse its discretion in finding that the detective's warrantless search of the flash drive was no more extensive than the search conducted by the private party. The private party testified that he saw thumbnail views of "kiddie porn" after he viewed several folders on the flash drive. The detective who conducted a review to determine if images on the flash drive were prohibited under Arizona law testified that he quickly scrolled through thumbnail views of the contents of two folders before he opened a folder that displayed thumbnail views of at least four images of child pornography. The detective exited the program as soon as he confirmed child pornography was present on the flash drive. He later confirmed that child pornography was present in only that one folder, which contained 24,000 images, the majority of which was child pornography. On this record, the superior court did not err in finding that the detective's search of the flash drive was no more extensive than that of the private party. *See Runyan*, 275 F.3d at 464-65; *Jacobsen*, 466 U.S. at 115, 118-26. For these reasons, the detective's warrantless search of the flash drive "did not infringe any constitutionally protected privacy interest that had not already been frustrated as the result of private conduct" and, accordingly, did not violate Curtis' Fourth Amendment rights. *Jacobsen*, 466 U.S. at 126.

### B.        Search Of Flash Drive Pursuant To Warrant.

¶21        Curtis argues the superior court erred in denying his second motion to suppress, which sought to suppress evidence discovered during a second search of the flash drive following the issuance of a search warrant. Curtis argues that the evidence should have been suppressed because the probable cause affidavit supporting the warrant relied on evidence from the warrantless search. Curtis also alleges that the affidavit in support of the warrant relied on "false statements of material facts," specifically that the private party had reported seeing "several pictures of what he believed to be underage children engaged in sex acts," and that

the initial warrantless search revealed images showing a prepubescent female "having sexual intercourse with an adult male."

¶22 "A trial court must suppress evidence seized pursuant to a warrant if a defendant proves, by a preponderance of the evidence, that the affiant knowingly, intentionally, or with reckless disregard for the truth made a false statement to obtain the warrant *and* that the false statement was necessary to a finding of probable cause." *State v. Nordstrom*, 200 Ariz. 229, 245, ¶ 42, 25 P.3d 717, 733 (2001) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)), *overruled on other grounds by State v. Ferrero*, 229 Ariz. 239, 243, ¶ 20, 274 P.3d 509, 513 (2012). Innocent or negligent errors in an affidavit are not enough under *Franks*; proof is required that, at a minimum, the affiant entertained serious doubts about the truth of the avowals. *State v. Carter*, 145 Ariz. 101, 109, 700 P.2d 488, 496 (1985).

¶23 The record supports the superior court's finding of "no evidence of falsehoods in the search warrant affidavit." The four photographs from the flash drive providing the basis for the detective's declaration that he saw images depicting a child engaged in sex with an adult reasonably support such a conclusion. In addition, the private individual testified that he told police that the pictures he viewed depicted "kiddie porn" (which he described as involving "preteen children who I think would not understand that physical contact with an adult") and were "sexual in nature." The detective could reasonably have interpreted these statements to refer to children engaging in sexual acts. For these reasons, Curtis' argument that the evidence should be suppressed because the detective made false statements in the probable cause affidavit supporting the warrant fails.

C. **Search Of Hard Drive And CD Discovered In Seized Property.**

¶24 Curtis argues the superior court erred in denying his fifth motion to suppress, which claimed the police conducted a warrantless search of a portable hard drive discovered on the front passenger seat of a Honda Civic parked in his home driveway after the car had been towed to a police impound lot. Curtis argues on appeal that the search warrants issued for the car and his residence did not cover the portable hard drive found in the Honda Civic and a CD found in a Fujitsu laptop computer in his bedroom, and the evidence therefore should have been suppressed. Because Curtis did not ask the superior court to suppress the evidence discovered in a search of the CD found in the Fujitsu laptop computer on

the basis he raises on appeal, he bears the burden of demonstrating that any error was fundamental error resulting in prejudice. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 20, 115 P.3d 601, 607 (2005).

¶25        The initial search warrant for Curtis' residence and the Honda Civic authorized police to examine and impound the car to ascertain if its interior matched photographs found on the flash drive and to seize computers and digital media found in the car and at the residence for later search by forensic examiners for evidence of images of the sexual exploitation of minors in violation of A.R.S. § 13-3553(A). A second search warrant judicially approved later in the day authorized the search and impoundment of a Hyundai that Curtis was driving the day of his arrest. A third search warrant judicially approved the following day authorized police to search digital media and computers seized from the residence or the vehicles as identified in an attached Exhibit A. The detective who prepared the search warrants testified that he obtained the third warrant as a "precautionary" measure and inadvertently omitted the portable hard drive from Exhibit A discovered earlier that day in the Honda Civic.

¶26        The superior court concluded that the initial search warrant covering the Honda Civic and Curtis' residence properly allowed the search of any seized digital media, including the late-discovered portable hard drive (notwithstanding the technical error in omitting that late-discovered portable hard drive from the list of seized items to be searched in Exhibit A to the third warrant). On appeal, Curtis has shown no error in the superior court's conclusion. Moreover, the same analysis applies to the search of the CD in the Fujitsu laptop computer seized from Curtis' bedroom, which was not discovered until sometime after the computer was seized. "[O]nce an item in an individual's possession has been lawfully seized and searched, subsequent searches of that item, so long as it remains in the legitimate uninterrupted possession of the police, may be conducted without a warrant." *United States v. Burnette*, 698 F.2d 1038, 1049 (9th Cir. 1983). Here, police lawfully seized the Honda Civic and the laptop computer pursuant to the first warrant to allow time and a secure venue for a subsequent, more thorough search, including a comparison of the interior of the Honda Civic to the background of certain photographs, and to allow a forensic search of computers and other digital media. Because the portable hard drive and the CD in the Fujitsu laptop computer were discovered while the items were in the uninterrupted possession of the police pursuant to their execution of the first warrant, it was not necessary for police to obtain another warrant to conduct these searches. Under these facts and circumstances, the superior court did not err in refusing to suppress the evidence found on the portable hard drive,

or fundamentally err in failing to suppress the evidence found on the CD discovered in the Fujitsu laptop computer.

### D.      Execution Of Search Warrant 2009-003192.

¶27      Curtis argues Search Warrant 2009-003192 was overbroad as executed, because police "exceeded the extent of the probable cause upon which it was based" by seizing more than 120 items of computer memory and other property "without first determining if it contained any illegal images or evidence of any crime." Curtis raised this issue in a Motion to Suppress SW 2009-003192 and Motion to Controvert, filed after the four-day evidentiary hearing. Because the record does not reflect that the superior court explicitly ruled on this motion, the motion is deemed denied. *See State v. Hill*, 174 Ariz. 313, 323, 848 P.2d 1375, 1385 (1993).

¶28      The Fourth Amendment prohibits the issuance of general warrants that would lead to "exploratory rummaging in a person's belongings." *Andresen v. Maryland*, 427 U.S. 463, 480 (1976) (citation omitted). Instead, the Fourth Amendment requires that a warrant describe with particularity the things to be seized and searched. U.S. Const. amend. IV. This particularity requirement limits police to the search for, and seizure of, evidence of crimes for which the issuing court found probable cause. *See State v. Alder*, 146 Ariz. 125, 129, 704 P.2d 255, 259 (App. 1985).

¶29      In this case, the warrant furnished proper grounds for seizure and a later forensic examination of all computers and digital storage media at Curtis' residence and in his vehicles to determine the source of the child pornography found on the flash drive linked to him, and to determine if Curtis possessed additional child pornography on other devices. The identification of child pornography as the offense for which evidence was sought provided "a sufficiently specific definition to focus the search." *United States v. Hay*, 231 F.3d 630, 638 (9th Cir. 2000). Nothing requires that "the warrant be tailored to obtain only that evidence already known to exist." *United States v. Banks*, 556 F.3d 967, 973 (9th Cir. 2009). When, as in this case, police did not know the source of the offending images on the flash drive, or on what computers additional images might have been stored, seizure of all of the computers to allow a later forensic search for child pornography was warranted. *See Banks*, 556 F.3d at 973; *Hay*, 231 F.3d at 637. In this case, as in others, "[a]s a practical matter, the seizure and subsequent off-premises search of the computer and all available disks was about the narrowest definable search and seizure reasonably likely to obtain the images." *United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999). Moreover, cognizant of Curtis' profession as

an attorney and apparent author, police assured the court issuing the warrant that they would take particular care to ensure that "no protected files or documents are opened or altered in any way," and police subsequently performed a forensic search only for images (which might depict child pornography). Under these circumstances, the execution of Search Warrant 2009-003192 was not overbroad.

### E.     Subpoena Of Suppressed Bank Records.

¶30         Curtis argues that the fruit of the poisonous tree doctrine precluded the State from subpoenaing and introducing at trial the same bank records that police had originally obtained by a court order that was procedurally improper. The superior court, however, noted during argument on the original motion to suppress that the State could properly obtain the records by other means, and granted the motion to suppress "without prejudice to the State to lawfully obtain such records." The court later denied Curtis' motion to quash the State's subpoena for the bank records, finding no bad faith on the part of the officers.

¶31         Evidence derived from an illegal search or seizure, the "fruit of the poisonous tree," is subject to the exclusionary rule requiring suppression. *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). The exclusionary rule, however, does not apply "to evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality," or to evidence "that would inevitably have been discovered without reference to the police error or misconduct." *Murray v. United States*, 487 U.S. 533, 537, 539, 540-44 (1988); *Nix v. Williams*, 467 U.S. 431, 448 (1984). These "independent source" and "inevitable discovery" doctrines strike the proper balance of "putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred." *Nix*, 467 U.S. at 432. Before obtaining Curtis' bank records by a court order that was procedurally improper, the police had already obtained a credit report showing that Curtis maintained an account with the bank. The State's knowledge that Curtis maintained a bank account formed an independent basis for the subpoena of bank records, and also would have inevitably led to the discovery of the bank charge at issue. *Cf. Murray*, 487 U.S. at 540-44 (discussing analysis). Accordingly, the superior court did not err in refusing to quash the subpoena for the bank records, and in allowing the admission into evidence for impeachment purposes, a page from the records showing Curtis' debit card was used to purchase a Tempe Marketplace Harkins Theatre ticket a few days before the flash drive was found in the Tempe Marketplace parking lot.

## III.    Rulings On Law Office Computer Records.

¶32        Curtis argues the superior court erred by: (1) ruling that he could not use his investigator to search his law office and client files (from before his retirement in 2006) without waiving his clients' attorney-client privilege, and (2) refusing to order the State to provide electronic copies of his computer files to his advisory counsel or investigator so that Curtis himself could search these files.

¶33        Curtis has not cited to any portion of the record showing that the superior court ruled that he could not use his investigator to search his law office and client files without waiving his clients' privilege. The court suggested at an early pretrial hearing that such a waiver might occur but made no ruling because Curtis informed the court that he had instructed his investigator not to view client files. Accordingly, this argument lacks any record support on appeal.

¶34        Curtis' argument that the superior court erred by refusing to order the State to provide electronic copies of his computer files to his advisory counsel or investigator so that Curtis himself could search the files also lacks merit. The State is required to make items otherwise prohibited by the statute criminalizing the sexual exploitation of children "reasonably available for inspection," but requires reproduction or release of such prohibited items only "[u]pon a substantial showing by a defendant that reproduction or release for examination or testing of any particular item is required for the effective investigation or presentation of a defense, such as for expert analysis." Ariz. R. Crim. P. 15.1(j). This court reviews rulings on pretrial discovery issues for abuse of discretion. *Cervantes v. Cates*, 206 Ariz. 178, 181, ¶ 11, 76 P.3d 449, 452 (App. 2003), *superseded on other grounds by* Ariz. R. Crim. P. 15.1(j).

¶35        Shortly after Curtis was indicted, the State provided notice that it would make all contraband available for Curtis' inspection at the Maricopa County Attorney's Office, the Tempe Police Department or another convenient or mutually agreed upon location. At a pretrial hearing less than a week after that notice, the State advised the superior court that its forensic examiner had copied the four terabytes (a large amount) of seized electronic data to one or more hard drives for examination by Curtis' consulting expert.

¶36        At a pretrial hearing three months later, the parties engaged in an extended discussion over whether the State could furnish a copy of the electronic data to Curtis for his consulting expert's unsupervised

examination, in light of the known contraband and the potential for more contraband on the devices that the State had not viewed because of a court order protecting files subject to the attorney-client privilege. The court directed the prosecutor to prepare an order that would provide Curtis' consulting expert with a read-only copy of the electronic files, with the proviso that the expert not copy any of the files, and return the copy when the review was finished. The record, however, does not reflect that any such order was prepared or signed or that Curtis ever complained about the absence of such an order.

¶37        The record instead reflects that the following month, Curtis' consulting expert was reviewing the hard drive containing the seized media. The court later adopted the prosecutor's proposal that Curtis and his expert not be provided copies of the seized media containing contraband, but be allowed to inspect the evidence under the supervision of a deputy sheriff subject to a gag order, which Curtis agreed was "a perfectly acceptable procedure." The record reflects that Curtis and a successor expert then reviewed the seized media on several occasions before and during trial.

¶38        On this record, the State made the electronic media "reasonably available for inspection," as required under Rule 15.1(j). The record demonstrates that Curtis received all of the access that he sought before and during trial, as evidenced by the State's granting his inspection requests, by his failure to seek a continuance of the trial and his agreement to mid-trial review of seized media. In addition, Curtis failed to make the "substantial showing" required under Rule 15.1(j) that would have required him to be furnished copies of the contraband. In short, the record does not support Curtis' argument that he was denied reasonable access to the evidence, or wrongly denied copies of the seized material.

¶39        For the first time on appeal, Curtis claims that his rights under *Brady v. Maryland*, 373 U.S. 83 (1963) were violated by his purported lack of meaningful access to the electronic media, depriving him of the opportunity to develop his defenses. This argument, however, is speculation not supported by the record or his argument on appeal. In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Curtis has failed to identify any evidence that the State failed to disclose, and has not explained how he could have proved his defenses that the charged images came from his former clients' files, were planted

14

by others or were altered if he would have been provided greater access to the content of the electronic media. Under these circumstances, Curtis has abandoned and waived such claims. *See State v. Moody*, 208 Ariz. 424, 452 n.9, ¶ 101, 94 P.3d 1119, 1147 n.9 (2004) (failure to present "significant arguments, supported by authority" in opening brief waives issue) (citing *State v. Carver*, 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989)).

## IV. Constitutionality Of A.R.S. § 13-3553 As Applied.

¶40        Curtis argues the superior court erred in denying his motion to dismiss, claiming A.R.S. § 13-3553 is unconstitutionally overbroad as it applies to attorneys who obtained child pornography in the representation of clients and the court "improperly instructed the jury about the statute and defenses to it." Curtis failed to object to the instruction on the ground he raises on appeal, and accordingly must show that any error in the instruction was fundamental and prejudicial. *Henderson*, 210 Ariz. at 567, ¶ 20, 115 P.3d at 607. This court reviews the adequacy of jury instructions in their entirety to determine if they accurately reflect the law. *Hoskins*, 199 Ariz. at 145, ¶ 75, 14 P.3d at 1015.

¶41        Arizona is a "code state," proscribing only those offenses identified as crimes in the governing statutes and ordinances. A.R.S. § 13-103(A) (abolishing common law crimes). In construing a statute, the court starts with the statute's language. *State v. Jenkins*, 193 Ariz. 115, 119, ¶ 11, 970 P.2d 947, 951 (App. 1998). A.R.S. § 13-3553(A)(2) prohibits, in pertinent part, a defendant from "knowingly . . . possessing. . . any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct." "Exploitive exhibition," in turn, is defined in pertinent part as the exhibition of genitals of any person "for the purpose of sexual stimulation of the viewer." A.R.S. § 13-3551(4). "Sexual conduct" is defined as including in pertinent part masturbation "for the purpose of sexual stimulation of the viewer," and actual or simulated sexual intercourse (including oral/genital). A.R.S. § 13-3551(9)(a)-(d). Contrary to Curtis' argument, these definitions do not add an additional element to the statutory offense that prohibits a defendant from knowingly possessing such images only *for the purpose of sexual stimulation*. *See* A.R.S. § 13-3553(A)(2). These definitions simply limit the types of images that a defendant must not knowingly possess. *See State v. Hazlett*, 205 Ariz. 523, 531, ¶¶ 27-28, 73 P.3d 1258, 1266 (App. 2003) (noting courts "have emphasized that under these types of statutes, the material, at a minimum, must be lewd and lascivious"); *cf. State v. Gates*, 182 Ariz. 459, 462-66, 897 P.2d 1345, 1348-52 (App. 1994) (rejecting argument in interpreting prior version of statute "that when deciding whether

something constitutes a 'lewd exhibition,' [the court] should focus on the intent of the defendant").

¶42      The superior court instructed the jury precisely as provided in the statutes, and specifically that it was an offense to knowingly possess images of minors engaged in sexual intercourse, or images of minors engaged in masturbation or exploitative exhibition "for the purpose of sexual stimulation of the viewer." This is a proper statement of the law. As a factual matter, Curtis is mistaken in claiming the superior court failed to instruct the jury that the offense of sexual exploitation of a minor requires that the defendant knowingly possess the exploitative images for purposes of sexual stimulation. Accordingly, Curtis' claim of error lacks support in either the law or the factual record.

¶43      The superior court also did not err in refusing to dismiss the charges on the ground that A.R.S. § 13-3553(A)(2) is overbroad as applied to attorneys, and did not err in instructing the jury that an attorney could assert an affirmative defense only insofar as he possessed child pornography for the active defense of a client, or to advise a client. The superior court first noted that the Legislature had not provided a statutory defense to possession of child pornography by a defense attorney, A.R.S. § 13-3553, and had abolished all common law defenses, A.R.S. § 13-103. The court further reasoned that A.R.S. § 13-103 cannot prevent a defendant from raising *constitutional* defenses to a criminal charge, *see Jones v. Sterling*, 210 Ariz. 308, 314 n.7, ¶ 24, 110 P.3d 1271, 1277 n.7 (2005), and a defense attorney's possession of child pornography solely for purposes of representing a client and resolution of "the case at hand" should not expose the attorney to criminal liability, citing *Cervantes*, 206 Ariz. at 186, ¶ 30, 76 P.3d at 457 and *United States v. Flynn*, 709 F. Supp. 2d 737, 743 (S.D. 2010). The court accordingly allowed Curtis to assert an affirmative defense that he was required to possess the images to defend and resolve an active legal case, or to advise a client. The court instructed the jury that it was an affirmative defense to the sexual exploitation charges "that the possession was in the capacity of a lawyer for the active defense of a client, or to properly advise a client regarding the images." The court further instructed the jury that "[t]he lawful possession ends when the case ends or the advice has been rendered. Once lawful possession ends, the images must be returned or destroyed."

¶44      This court reviews de novo whether a statute is constitutional. *State v. Mutschler*, 204 Ariz. 520, 522, ¶ 4, 65 P.3d 469, 471 (App. 2003). A party claiming a statute is unconstitutional must overcome a "strong presumption" of constitutionality, and courts will, if possible,

16

interpret a statute to avoid a constitutional infirmity. *State v. Kaiser*, 204 Ariz. 514, 517 ¶ 8, 65 P.3d 463, 466 (App. 2003). The party challenging the constitutionality of a statute bears the burden of establishing its invalidity. *State v. Russo*, 219 Ariz. 223, 225, ¶ 4, 196 P.3d 826, 828 (App. 2008).

¶45     A statute that includes within its scope speech protected by the First Amendment is considered overbroad. *Kaiser,* 204 Ariz. at 519 ¶ 17, 65 P.3d at 468. However,

> where conduct and not merely speech is involved . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. There must be a realistic danger that the statute will *significantly* jeopardize recognized first amendment protections of individuals not before the court. *Id.* at 519, ¶ 7, 65 P.3d at 468 (citations omitted).

Child pornography is not protected by the First Amendment. *See New York v. Ferber*, 458 U.S. 747, 764 (1982). Moreover, Arizona's statutory scheme ensures that a person may be convicted only for knowing possession of child pornography (images of minors engaged in sexual conduct or lewd and lascivious exhibition of their genitals). Accordingly, Curtis' argument that the sexual exploitation statute is overbroad (because, as interpreted by the court, it applied to his possession of images for a purpose other than sexual stimulation) fails. *See id.* at 746.[3]

¶46     Nor is the court persuaded by Curtis' challenge to the constitutionality of the statute and adequacy of jury instructions when applied to an attorney's possession of such images "in the bowels of his back-up computer drives or media . . . associated with past client representations," inadvertently or because of the "[m]any factors [that] would require retention of this evidence" beyond the actual

---

[3] The statute by its terms does not prohibit possession of medical studies that include photographic evidence depicting a minor's genitals for the purpose of showing trauma from intercourse as Curtis argues**.** *See* A.R.S. § 13-3553(A)(2). Nor did the superior court preclude such evidence at trial on the ground the studies contained child pornography. Instead, the court found, as Curtis conceded, that certain studies (which are not in the record on appeal) were not particularly relevant when offered.

representation. Curtis' challenge based on claimed inadvertent possession fails to recognize that the State was required to prove beyond a reasonable doubt that he "knowingly" possessed the images. *See* A.R.S. § 13-3553(A)(2).

¶47 Curtis has offered no authority supporting a defense that would allow him to retain child pornography obtained in connection with legal representation years after that representation ended. In addition, he failed to present evidence at trial to support a defense that it was necessary for him to retain possession of the charged images in representing any client. Curtis has offered no legal support for his position that the statute is overbroad as applied because it was legally permissible for him to possess child pornography obtained as evidence in a legal case long after his active involvement in the case ended. The sole constitutional basis for the defense that Curtis asserts is the Sixth Amendment right to effective assistance of counsel, which extends only to the first appeal of right and no further (i.e., during the "active" representation on which the superior court instructed the jury). *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).

¶48 The Arizona Supreme Court accounted for this constitutional right in amending the Arizona Rules of Criminal Procedure to restrict the release of copies of child pornography to defense counsel except upon a substantial showing that possession of a copy of a particular image was "required for the effective investigation or presentation of a defense." *See* Ariz. R. Crim. P. 15.1(j) (imposing restrictions on such release or copying, including requiring that "the item shall be returned to the prosecutor by a deadline ordered by the court"); *accord* A.R.S. § 13-3553(B) ("If any visual depiction of sexual exploitation of a minor is admitted into evidence, the court shall seal that evidence at the conclusion of any grand jury proceeding, hearing or trial."). These amendments were in response to a holding that the prior rules required the State to provide copies of such materials to defense counsel for use in the defense of the case without such a showing. *See Cervantes*, 206 Ariz. at 181-86, ¶¶ 11-32, 76 P.3d at 452-57. Curtis, however, testified that he had no cases involving child pornography after 2005, he did not recognize any of the images charged in Counts 1 through 10 (the only counts for which he claimed this defense) and he had destroyed any cross-reference between client names and evidence on his computers after he retired from

the practice of law in 2006.[4] Under these circumstances, the record fails to support Curtis' claim that he possessed the charged images based on the possibility that they would be needed to defend a client's conduct, meaning his claim that the statute is overbroad as applied fails.

## V.    Admission Of Other Acts Evidence.

¶49        Curtis argues the superior court abused its discretion in admitting more than 300 images depicting uncharged acts that the State had not specifically identified before trial, and without determining whether they were admissible as intrinsic evidence or under Arizona Rule of Evidence 404(b) or (c). This court reviews the superior court's ruling on the admission of evidence for an abuse of discretion. *State v. Garcia*, 200 Ariz. 471, 475, ¶ 25, 28 P.3d 327, 331 (App. 2001).

¶50        As an initial matter, the record does not support Curtis' argument that the superior court admitted and allowed the State to publish to the jury 300 uncharged images in the "cheare" series of images without any foundation or relevance determination. Instead, the record shows that the court admitted 10 uncharged images in the "cheare" series as other acts evidence, although commenting that Curtis' examination of his expert on the content of images in that series that had not been admitted had opened the door to publication of the entire series.

¶51        The superior court acted within its discretion by admitting as other acts evidence 23 uncharged sexually exploitative images (including the uncharged "cheare" images noted above), pedophilic titles on 4 CDs and evidence that the charged images were also present on other media seized from Curtis. As applicable here, evidence of other acts is not admissible to prove character "to show action in conformity therewith," but it may be admissible for other purposes, such as proof of motive, intent, or knowledge. *See* Ariz. R. Evid. 404(b). Stated differently, and subject to various limitations, "[e]vidence relevant for any purpose other than showing propensities to act in a certain way remains admissible." *State v. Connor*, 215 Ariz. 553, 563, ¶ 32, 161 P.3d 596, 606 (App. 2007). The

---

[4] Curtis also is mistaken in arguing that the jury instruction "required the attorney to reveal those clients from whom the evidence was received or be deemed guilty." The superior court did not instruct the jury that the defense was not available unless Curtis identified the specific clients for whom he possessed the images.

superior court "need not explain the basis for the decision to admit" other acts evidence under Rule 404(b) "[s]o long as the decision is supported by the facts before the court." *See State v. Jeffers*, 135 Ariz. 404, 417, 661 P.2d 1105, 1118 (1983) (citations omitted). As applied, Curtis opened the door to the admission of this evidence under Rule 404(b) by claiming that he possessed most of the charged images in his capacity as a lawyer, and by cross-examining the case agent on what evidence could be shown that Curtis actually possessed the charged images. The other acts evidence was admissible to show that Curtis knowingly possessed the charged images, and to rebut his defense that he possessed the charged images given his prior work as an attorney representing clients. *See Connor*, 215 Ariz. at 563, ¶ 32, 161 P.3d at 606. The court also properly instructed the jury about the limited purpose for which such other acts evidence could be considered.

¶52 Similarly, the superior court did not abuse its discretion by failing to require the State to identify the specific uncharged images that it intended to admit before Curtis opened the door in his opening statement. The court gave Curtis and his expert an opportunity to review the uncharged images before Curtis cross-examined the detective, and Curtis did not ask for a continuance to allow further examination. Such action was not error.

¶53 Finally, the record fails to show that the superior court found the other acts evidence was admissible to demonstrate aberrant sexual propensity under Rule 404(c) or relied on Rule 404(c) in admitting the other acts evidence. Curtis did request a Rule 404(c) limiting instruction. Ultimately, the superior court instructed the jury on the limited use it could make of both Rule 404(b) and (c) evidence, and that it could consider such evidence only if it found by clear and convincing evidence that Curtis had committed the other acts. These limiting instructions, including the Rule 404(c) instruction Curtis requested, prevented any unfair prejudice that might ensue from the evidence. *See State v. Villalobos*, 225 Ariz. 74, 80, ¶ 20, 235 P.3d 227, 233 (2010). On this record, the court did not abuse its discretion in admitting this other acts evidence.

**CONCLUSION**

¶54        Curtis' convictions and resulting sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: MJT