IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

ARTHUR RAY MEEDS, *Appellant*.

No. 1 CA-CR 16-0281
FILED 5-3-2018

Appeal from the Superior Court in Maricopa County
No.  CR2015-118294-001
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian Francis
*Counsel for Appellee*

Ballecer & Segal LLP, Phoenix
By Natalee E. Segal
*Counsel for Appellant*

**OPINION**

Judge Randall M. Howe delivered the opinion of the Court, in which
Presiding Judge Paul J. McMurdie and Judge Michael J. Brown joined.

**H O W E**, Judge:

¶1        Arthur Ray Meeds appeals his convictions and sentences for stalking, a class 3 felony, and threatening or intimidating, a class 6 felony. Meeds contends that A.R.S. § 13–1202(B)(2), which enhances the consequence for a criminal street gang member who threatens or intimidates another person, is unconstitutionally vague because it fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and allows for arbitrary and discriminatory enforcement. He also argues that the statute is unconstitutionally overbroad because it impinges on First Amendment rights. We hold that A.R.S. § 13–1202(B)(2) is neither unconstitutionally vague nor overbroad.

## FACTS AND PROCEDURAL HISTORY

¶2        Over a period of two days, Meeds sent a series of threatening text messages to his then-girlfriend, N.F., who was trying to end their 15-year relationship. After Meeds threatened to "blow [her] face off,"[1] he showed up at her workplace to make sure that she was there. After Meeds texted, "im here," N.F. responded, "you have threatened my life too many times. Just leave[.]" When Meeds did not leave and told N.F. to come talk with him, N.F. texted "I can't do face to face with you, you've threatened my life one too many times and I just don't understand why[.]" Meeds responded that N.F.'s words and actions were "going [to] get [her] hurt[.]"

¶3        Meeds drove off when police arrived at N.F.'s workplace and resumed sending threatening texts to her that night. In one, he sent N.F. a photograph of her nephew's house, where she lived with her son, and threatened to shoot up the house or set it on fire. He continued, "im here," and warned her, "do i need [to] go to the door or send them in[,] your choice because when i pull off the next car is going [to] light that bitch up[.]" In another, he threatened her nephew's wife by stating that she "will . . . enjoy my firework show," which N.F. interpreted as "he was threatening her life." He continued, "i told you befor i dont got [to] be around to make it hot[.]" He followed up by texting N.F. that she and her nephew had 24 hours to get out of the city or he would "gun [them] down!!!!!"

¶4        An Arizona Department of Public Safety detective interviewed N.F. two days later. The detective reviewed reports from the officers that responded to N.F.'s place of work, collected the security

---

[1]        Unless otherwise noted, we quote Meeds's text messages as they appeared on N.F.'s cellphone.

footage, and gathered the text messages Meeds sent to N.F. After the interview with N.F., the detective described N.F. as "scared shitless." The detective subsequently arrested Meeds and the State charged him with (1) stalking and (2) threatening or intimidating, which included an allegation that Meeds was a criminal street gang member.

¶5            During trial, N.F. testified to the text messages exchanged during that two-day period. N.F. also testified that she believed Meeds was a gang member, had seen him with other gang members, and had heard him reference the "Crips" gang. She stated, however, that she was not sure about whether Meeds was a gang member. She further testified that Meeds's violent conduct and threats had previously escalated before this incident and "[t]hat's why I started fearing for my life, because it escalated." During N.F.'s testimony, Meeds moved to represent himself. The court granted Meeds's motion and Meeds's former counsel remained as advisory counsel.

¶6            A Phoenix police detective, an expert in criminal street gangs, testified that Meeds met at least four criteria identifying him as a member of the Lindo Park Crips criminal street gang. The gang expert testified that he had contact with Meeds two years earlier when Meeds was at Lindo Park with about ten documented Lindo Park Crips. Because of this contact, the gang expert had filled out a "gang member information card" ("GMIC") on Meeds; a card that officers use to report when potential gang members meet one or more of the gang criteria listed. The gang expert also testified that he had discussed Meeds with senior detectives and discovered several police reports that documented Meeds as a Lindo Park Crip and noted that Meeds often wore baby blue—Lindo Park Crips colors. Meeds objected to the gang expert's testimony about discussions with the senior detectives and about the prior police reports reviewed, which the trial court denied. The gang expert stated that Meeds's text messages to N.F. satisfied the "written or electronic correspondence" element of GMIC. The gang expert opined that based on what he heard during trial, Meeds had extensive knowledge of documented gang members, locations within the neighborhood, and gang colors. Thus, the gang expert concluded that "from the time that I've contacted him in 2014 to this trial," Meeds satisfied "at least four" of the seven GMIC criteria.

¶7            Meeds objected during his cross-examination of the gang expert that the State had violated its disclosure obligations by failing to produce copies of the pre-2014 police reports that the expert referred to for past documentation of Meeds's gang membership. Meeds's advisory counsel informed the court that the gang expert had disclosed the prior

3

police reports in an interview with her before trial. Counsel told the court she had not requested copies of the reports at the time because "it[ was] not an area [she] would have wanted reports or needed them." She also noted that she had given Meeds her notes of the detective's interview, which included the "years and reports and dates of information" the detective relayed to her. The court found that the State had not violated its disclosure obligations, but ordered the prosecutor to redact copies of the cited police reports and furnish them to Meeds. Meeds, however, refused to accept the reports and instead moved for dismissal, mistrial, or to strike the expert's testimony. The court treated the motion as seeking reconsideration of the prior ruling and denied it.

¶8        The jury convicted Meeds of the charged crimes of stalking and threatening or intimidating, and found that he was a gang member on the dates of the latter offense. The court found that Meeds had been convicted of eight prior felony convictions and sentenced him to concurrent terms totaling 11.25 years' imprisonment. Meeds timely appealed.

## DISCUSSION

### 1. Sufficiency of Evidence

¶9        Meeds argues that insufficient evidence supported his conviction for the class 3 felony of stalking because no evidence showed that the victim feared for her life or the lives of family members. We review de novo the sufficiency of the evidence to support a conviction. *State v. West*, 226 Ariz. 559, 562 ¶ 15 (2011*).* We consider both direct and circumstantial evidence to determine if substantial evidence exists to support the jury's verdict. *Id.* at ¶ 16. Because substantial evidence supports the jury's verdict, no error occurred.

¶10       Substantial evidence is evidence that reasonable persons could accept as adequate and sufficient to support a conclusion of the defendant's guilt beyond a reasonable doubt. *State v. Stroud*, 209 Ariz. 410, 411–12 ¶ 6 (2005). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Cox*, 217 Ariz. 353, 357 ¶ 22 (2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶11       Stalking requires "intentionally or knowingly engag[ing] in a course of conduct that is directed toward another person" if that conduct "[w]ould cause a reasonable person to fear death of that person or that person's immediate family member and that person in fact fears death of

4

that person or that person's immediate family member." A.R.S. § 13–2923(A)(2) (2015). The statute defines "immediate family member" to include any "person who regularly resides in a person's household[.]" A.R.S. § 13–2923(C)(2) (2015).

¶12          The evidence, viewed in the light most favorable to support the conviction, was sufficient to prove beyond a reasonable doubt that Meeds engaged in conduct that caused N.F. to fear for her life or for the life of a family member, and that fear was reasonable under the circumstances. N.F. testified that Meeds's conduct and threats had previously escalated before and that is why she feared for her life. Meeds texted N.F. that he was going to blow her face off and that N.F. was going to get herself hurt if she did not acquiesce to his demands. N.F. testified at trial that when Meeds arrived at her place of work she felt threatened and felt that he was going to harm her. Later that evening, Meeds went even further. He texted her a photo of where she lived and stated that her nephew's wife would enjoy his "firework show." N.F. testified that she interpreted this message as a direct threat against the life of her nephew's wife, with whom she lived. Ultimately, Meeds texted N.F. that she and her nephew had 24 hours to leave the city or he would gun them down. This was a direct threat to N.F. and her nephew's lives. Further, the Department of Public Safety detective who interviewed N.F. two days later testified that she appeared to be "scared shitless." He testified that she conveyed to him that she felt her life and her family's lives were in danger. The evidence supports the jury's finding that a reasonable person would have felt threatened and that N.F. subjectively felt that her life was in jeopardy.

## 2. Gang Expert Testimony

¶13          Meeds argues next that the trial court abused its discretion by allowing a gang expert to testify to the ultimate issue in this case, based on what other officers told the expert or police reports the expert had read. We ordinarily review a trial court's ruling on the admissibility of expert testimony for abuse of discretion. *State v. Ortiz*, 238 Ariz. 329, 333 ¶ 5 (App. 2015). Because Meeds did not raise any objection at trial to the expert testimony on the ground it improperly addressed the ultimate issue, however, we review this issue only for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 568 ¶ 22 (2005). On fundamental error review, the defendant has the burden of proving that the court erred, that the error was fundamental in nature, and that he was prejudiced thereby. *Id.* at 567 ¶ 20.

¶14          Membership in a criminal street gang is an element of the charged offense of threatening or intimidating. *See* A.R.S. § 13–1202(B)(2).

A "criminal street gang member" is statutorily defined as a person to whom at least two of the following criteria apply: self-proclamation; witness testimony or official statement; written or electronic correspondence; paraphernalia or photographs; tattoos; clothing or colors; or any other indicia of street gang membership. *See* A.R.S. § 13–105(9).

**¶15**　　　The gang expert testified that Meeds met at least four of the criteria, based first on his personal observation of Meeds in 2014 at Lindo Park with about ten other documented criminal street gang members. He testified that he also recognized indicia of Lindo Park Crips' membership in the spelling of the text messages sent to the victim in this case; in the calendar entries on Meeds's cellphone seized upon his arrest; in Meeds's extensive knowledge of the Lindo Park Crips, revealed in his questions of N.F. at trial; and in N.F.'s testimony about Meeds's statements to her about the Crips. The expert testified that based on this evidence, Meeds met at least four criteria for being a criminal street gang member.

**¶16**　　　Meeds offers no argument and cites no authority for the proposition that the gang expert improperly testified on the ultimate issue, and has accordingly arguably waived this claim of error. *See State v. Moody*, 208 Ariz. 424, 452 n.9 ¶ 101 (2004) (failure to present significant arguments, supported by authority in an opening brief waives an issue). Moreover, the argument lacks support in both the law and the facts. Arizona Rule of Evidence 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Rule 704(b) prohibits only an opinion that addresses "whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." The gang expert did not testify about Meeds's mental state or condition. The gang expert testified only about his own knowledge and experience of the Lindo Park Crips, and offered his opinion that Meeds met at least four criteria for membership in the criminal street gang, based on his review of the evidence and his observations at trial. Meeds's claim of error, even if not waived, is not supported by the law or the record.

**¶17**　　　Nor did the court abuse its discretion by overruling Meeds's objection that the expert was improperly relying on hearsay in the police reports and discussions with other police officers. An expert may base an opinion on facts or data that experts in the particular field would reasonably rely on, even if those facts would otherwise be inadmissible at trial, and he may disclose these facts to the jury "if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Ariz. R. Evid. 703. The gang expert testified that he reasonably relied upon prior police investigations in forming his opinion. The trial court could have

reasonably concluded that the investigations had probative value that substantially outweighed their prejudicial effect because they showed that Meeds met at least two criteria for gang membership even before the threats that occurred in this case. On this record, the court did not abuse its discretion by overruling Meeds's objection to the expert's brief reference to what senior detectives told him and what he learned from other police reports about documentation of Meeds's past gang membership.

### 3. Purported Disclosure Violation

**¶18**        Meeds argues that the prosecutor committed misconduct by failing to disclose police reports or other evidence of Meeds's gang membership and that the trial court abused its discretion by denying his requests for mistrial, dismissal, or to strike the expert's testimony. We review the scope of disclosure required under Rule 15.1 de novo and the trial court's assessment of the adequacy of disclosure for an abuse of discretion. *State v. Roque*, 213 Ariz. 193, 205 ¶ 21 (2006), *disapproved on other grounds by State v. Escalante-Orozco*, 241 Ariz. 254, 267 ¶ 14 (2017). "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *State v. Morris*, 215 Ariz. 324, 335 ¶ 46 (2007) (internal citations omitted). We will not disturb a trial court's denial of a mistrial for prosecutorial misconduct in the absence of a clear abuse of discretion. *State v. Newell*, 212 Ariz. 389, 402 ¶ 61 (2006).

**¶19**        The record supports the court's finding that the State did not violate its discovery obligations by failing to produce copies of the pre-2014 police reports referred to in the gang expert's testimony before trial. The disclosure rules require the State to disclose "[t]he names and addresses of experts who have personally examined . . . any evidence in the particular case, together with the results of physical examinations and of scientific tests, experiments or comparisons that have been completed[.]" Ariz. R. Crim. P. 15.1(b)(4) (2015). The rules also require the State, upon written request, to "make available to the defendant for examination, testing and reproduction . . . [a]ny completed written reports, statements and examination notes made by experts . . . in connection with the particular case." Ariz. R. Crim. P. 15.1(e)(3) (2015).

**¶20**        Six months before trial, the State disclosed that the gang expert would testify and summarized the subject matter of his testimony. Meeds's advisory counsel confirmed that the expert had disclosed in an interview two weeks before trial the specific police reports that he had

reviewed showing past documentation of Meeds's gang membership. Advisory counsel told the court that she did not request copies of the reports when she learned of them before trial because she did not want or need them. She also noted that Meeds had her notes of the detective's interview and that her notes had the information about the pre-2014 reports. The trial court found no disclosure violation had occurred because no obligation existed under the rules to produce this information without a specific request and no such request was made before trial. Meeds has failed to cite any authority for his claim that the prosecutor violated disclosure obligations by failing to furnish his defense counsel with copies of the reports absent her request, and we know of none. On this record, the prosecutor did not engage in misconduct and the court did not abuse its discretion by denying Meeds's request for mistrial or dismissal, or to strike the expert's testimony.

## 4. Constitutionality of A.R.S. § 13–1202(B)(2)

**¶21**     Meeds argues that A.R.S. § 13–1202(B)(2) is unconstitutionally vague because it fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, and is unconstitutionally overbroad because it impinges on First Amendment rights.[2] We review de novo whether a statute is constitutional. *State v. Hulsey*, 243 Ariz. 367, 386 ¶ 67 (2018). A party challenging a statute's constitutionality must overcome a "strong presumption" that the statute is constitutional, and we will interpret a statute in such a way as to give it a constitutional construction if possible. *State v. Kaiser*, 204 Ariz. 514, 517 ¶ 8 (App. 2003). The person

---

[2]     To the extent that Meeds also argues that the statute violates his equal protection rights because it punishes gang members more harshly than others who commit the same offense, he has waived this argument because he fails to offer any significant supporting analysis or citation to authority. *See Moody*, 208 Ariz. at 452 n.9 ¶ 101.

Further, the State argues that Meeds lacks standing to raise any constitutional challenge to A.R.S. § 13–1202(B)(2). "Ordinarily, a defendant may not challenge a statute as being impermissibly vague or overbroad where the statute has given him fair notice of the criminality of his own conduct, even though the statute may be unconstitutional when applied to someone else." *State v. Burke*, 238 Ariz. 322, 326 ¶ 5 (App. 2015). Although inartfully presented, because Meeds "challenges the statute as vague and overbroad in all circumstances, he has standing to press this appeal." *See id.*

challenging the statute bears the burden of establishing its invalidity. *State v. Russo*, 219 Ariz. 223, 225 ¶ 4 (App. 2008). Because Meeds raised neither of these arguments at trial, we review only for fundamental error. *See Henderson,* 210 Ariz. at 568 ¶ 22. On fundamental error review, the defendant has the burden of proving that the court erred, that the error was fundamental in nature, and that he was prejudiced thereby. *Id.* at 567 ¶ 20.

### 4a. Vagueness

**¶22**        Meeds argues that A.R.S. § 13–1202(B)(2) is unconstitutionally vague because it (1) lacks a disjunctive "or" between sections (B)(1) and (B)(2); (2) is unclear whether it applies to current, prior, or out-of-state gang members; and (3) permits arbitrary and discriminatory enforcement. A criminal statute is unconstitutionally vague only if it fails to give persons of ordinary intelligence reasonable notice of what conduct is prohibited and fails to provide explicit standards for enforcement. *State v. Tocco,* 156 Ariz. 116, 118 (1988).

**¶23**        Arizona Revised Statutes section 13–1202(B)(2) is not unconstitutionally vague. It provides that

> Threatening or intimidating pursuant to subsection A, paragraph 1 or 2 is a class 1 misdemeanor, except that it is a class 6 felony if:
>
> 1. The offense is committed in retaliation for a victim's either reporting criminal activity or being involved in an organization, other than a law enforcement agency, that is established for the purpose of reporting or preventing criminal activity.
>
> 2. The person is a criminal street gang member.

A.R.S. § 13–1202(B). Meeds argues that because the statute does not include the "disjunctive or" between sections (B)(1) and (B)(2), the statute could be read to require that both sections be fulfilled to elevate the offense to a class 6 felony. "When interpreting a statute, we start with the text because it is the most reliable indicator of a statute's meaning. When the text is clear and unambiguous, we need not resort to other methods of statutory interpretation to discern the legislature's intent because its intent is readily discernable from the face of the statute." *State v. Holle*, 240 Ariz. 300, 302 ¶ 11 (2016) (internal quotations and citations omitted). "When a statute is ambiguous or unclear, however, we attempt to determine legislative intent by interpreting the statutory scheme as a whole and consider the statute's

context, subject matter, historical background, effects and consequences, and spirit and purpose." *State v. Ross*, 214 Ariz. 280, 283 ¶ 22 (App. 2007) (internal quotations and citations omitted). This Court will not "declare invalid for vagueness every statute which we believe could have been drafted with greater precision." *Tocco*, 156 Ariz. at 119–20.

¶24 Although the legislature could have been more precise by inserting an "or" between the two subsections, the statute's language, read in context and considered in light of its legislative history, demonstrates that fulfillment of either of the distinct subsections would elevate the offense to a class 6 felony. The purpose of the 2007 amendment that added subsection (B)(2) was to "increase[] penalties for various offenses if the person is a criminal street gang member or if the offense involved promoting, furthering or assisting a criminal street gang." *See* Ariz. State Senate Fact Sheet, S.B. 1222, 48th Leg., 1st Reg. Sess. (Ariz. July 11, 2007). The Senate Fact Sheet specifically provides that "threatening or intimidating is a class 6 felony if the person is a criminal street gang member." *See id.* The statute's language and history show that the legislature intended that the subsections be read as two separate conditions, either of which would elevate the offense to a class 6 felony. Thus, the statute is not unconstitutionally vague on this ground.

¶25 Meeds also argues that the statute is unconstitutionally vague because it does not specify whether it applies to current, prior, or out-of-state gang members. The statute, however, on its face applies only to a person who "is" a criminal street gang member. A.R.S. § 13–1202(B)(2). Both "criminal street gang" and "criminal street gang member" are statutorily defined, and these definitions control whether an out-of-state gang membership qualifies. *See* A.R.S. § 13–105(8), (9). This Court has previously rejected a vagueness challenge to those definitions, and Meeds has given us no reason to revisit that decision. *See State v. Ochoa*, 189 Ariz. 454, 459–60 (App. 1997). Therefore, the statute is not unconstitutionally vague on this ground.

¶26 Finally, Meeds argues that the statute is unconstitutionally vague because it does not require a person to be charged under section (B)(2), and thus purportedly permits arbitrary and discriminatory enforcement. Because the statute conveys in sufficiently clear terms the prohibited conduct, the theoretical potential for arbitrary enforcement does not make it unconstitutionally vague. *See State v. Putzi*, 223 Ariz. 578, 580 ¶ 5 (App. 2010); *see also State v. McLamb*, 188 Ariz. 1, 6 (App. 1996) ("When the language is clear, [a] statute is not rendered unconstitutionally vague because there is a theoretical potential for arbitrary enforcement or the

exercise of discretion by a law enforcement officer or prosecutor, or even if the conduct is prevalent and ignored.").

## 4b. Overbreadth

**¶27**　　　Meeds argues that A.R.S. § 13–1202(B)(2) is overbroad because it deters constitutionally protected speech and association rights by punishing more harshly individuals who have at one time expressed "in some fashion" membership in a gang—whether or not gang membership was invoked or the gang furthered in commission of the crime. A statute that proscribes speech protected by the First Amendment is considered overbroad. *Kaiser,* 204 Ariz. at 519 ¶ 17. "Before a statute will be invalidated as facially overbroad, however, its deterrent effect on legitimate expression must be 'not only real, but substantial as well.'" *Ochoa*, 189 Ariz. at 459 (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)). A party challenging a statute's constitutionality must overcome a "strong presumption" that the statute is constitutional. *Kaiser*, 204 Ariz. at 517 ¶ 8.

**¶28**　　　Meeds has failed to meet his burden. Section 13–1202(B)(2) contains no express limitation of expression. Rather, it elevates the class of the offense of threatening or intimidating for a defendant who is a "criminal street gang member." The conduct of threatening or intimidating prohibited in A.R.S. § 13–1202(A)(1), the core offense with which Meeds was charged, is not protected by the First Amendment. *See In re Kyle M.*, 200 Ariz. 447, 451 ¶ 22 (App. 2001) (holding that A.R.S. § 13–1202(A)(1) does not infringe on free speech rights because it prohibits only genuine threats); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 773 (1994) ("Clearly, threats . . . are proscribable under the First Amendment."). Nor does the First Amendment prohibit the use of a defendant's prior speech, such as a proclamation of gang membership or wearing of gang colors, to establish an element of the crime, that is, that defendant was a criminal gang member for A.R.S. § 13–1202(B)(2) purposes. *See Ochoa*, 189 Ariz. at 460.

**¶29**　　　Meeds's right of association argument also fails. The First Amendment right of association does not prevent the legislature from penalizing a criminal street gang member who commits the offense of threatening and intimidating more severely than one who is not a criminal street gang member. The United States Supreme Court recognizes "freedom of association" in two distinct senses: (1) the right "to enter into and maintain certain intimate human relationships," such as marriage, close family relationships, and child-rearing; and (2) the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and

the exercise of religion." *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18 (1984). The second category of "expressive association" is meant to protect an individual's right "to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Id.* at 622.

**¶30** The record fails to show that the Lindo Park Crips engaged in any expressive activity the First Amendment protects, and Meeds does not explain why its activity should enjoy First Amendment protection. The record instead reflects that the goal of the Lindo Park Crips is to instill fear in the community and to commit criminal acts to get what they want. Participation in a criminal street gang such as the Lindo Park Crips, an association of persons who individually or collectively engage in the commission of felonies, is not protected by the First Amendment. *See City of Chicago v. Morales*, 527 U.S. 41, 53 (1999) (stating that Chicago loitering ordinance's "impact on the social contact between gang members and others does not impair the First Amendment 'right of association' that our cases have recognized" (internal citation omitted)); *Madsen*, 512 U.S. at 776 (freedom of association "does not extend to joining with others for the purpose of depriving third parties of their lawful rights"); *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989) (holding that the constitution does not recognize "generalized right of 'social association' that includes chance encounters in dance halls" (internal citation omitted)).

**¶31** Moreover, "[t]he right to associate for expressive purposes is not . . . absolute. Infringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts*, 468 U.S. at 623. "[V]iolence or other types of potentially expressive activities that produce special harms distinct from their communicative impact" are not entitled to constitutional protection. *Id.* at 628. "A person's right of association may be curtailed if necessary to further a significant governmental interest like eliminating public evils of crime, corruption and racketeering." *3613 Ltd. v. Dep't of Liquor Licenses & Control*, 194 Ariz. 178, 186 ¶ 36 (App. 1999).

**¶32** Section 13–1202(B)(2) serves a compelling state interest unrelated to the suppression of ideas: to protect the public from threats and intimidation by members of criminal street gangs, who presumably have a much greater ability than non-gang members to make good on those threats. Section 13–1202(B)(2) does not penalize mere membership in a criminal street gang—it penalizes the added menace inflicted when a criminal street gang member is engaged in criminal conduct. *See Callanan v.*

*United States,* 364 U.S. 587, 593 (1961) ("Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish."). Because the statute does not constrain any recognized protected category of association or speech, Meeds has failed to establish any First Amendment violation.

## CONCLUSION

**¶33**　　　For the foregoing reasons, we affirm Meeds's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:　AA